# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                              |   |                      |
|------------------------------|---|----------------------|
| DECEMBER CORPORATION         | : |                      |
|                              | : |                      |
| Appellant,                   | : | K15A-04-001 JJC      |
|                              | : | In and For Kent County |
| v.                           | : |                      |
|                              | : |                      |
| WILD MEADOWS HOME            | : |                      |
| OWNERS ASSOCIATION           | : |                      |
|                              | : |                      |
| Appellee.                    | : |                      |

## OPINION

Submitted: June 10, 2016
Decided: July 12, 2016

### *Upon Appeal of an Arbitrator's Order*
### *REVERSED IN PART & REMANDED*

Michael P. Morton, Esquire, Nicole M. Faries, Esquire, & David C. Zerbato, Esquire, MICHAEL P. MORTON, P.A., Greenville, Delaware; *Attorneys for Appellant.*

Robert J. Valihura, Jr., Esquire (of Counsel) THE LAW OFFICE OF ROBERT J. VALIHURA, JR., Greenville, Delaware; *Attorney for Appellant.*

James G. McGiffin, Jr., Esquire, COMMUNITY LEGAL AID SOCIETY, INC., Dover, Delaware & Brian S. Eng, Esquire, COMMUNITY LEGAL AID SOCIETY, INC., Wilmington, Delaware; *Attorneys for Appellee.*

Clark, J.

# I. INTRODUCTION

This is the Court's decision regarding an appeal of an arbitrator's order denying, in large part, a manufactured home community owner's requested rental increase. The proceedings before the arbitrator and this appeal are controlled by the Rent Justification Act (hereinafter, the "Act")[1]. The Court holds, after review of the record and the arbitrator's decision, that (1) an increase in rent, in an amount equal to the Consumer Price Index for All Urban Consumers in this area ("CPI-U") is authorized pursuant to the statute independent of the contested proceeding; (2) the arbitrator committed legal error by not addressing the statutory criteria required by the statute; and (3) the arbitrator committed legal error by denying the requested increase based on equitable criteria not authorized by statute. Accordingly, the decision of the arbitrator is reversed and remanded with instructions that the community owner's CPI-U increase be approved, and that the arbitration make specific findings regarding whether the community owner's requested rent increase in excess of the CPI-U is justified pursuant to the Act's criteria.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant, December Corporation (hereinafter "December Corporation") manages the Wild Meadows manufactured home community (hereinafter "Wild Meadows") in Dover. The community includes 223 rental sites. December Corporation leases lots in Wild Meadows to its tenants. Consistent with other like communities, the tenants primarily own their own homes but rent the land from the community owner.

The Wild Meadows Home Owners Association ("hereinafter "Homeowner's

---

[1] 25 *Del.C.* § 7040 *et seq.*

Association") represents the large majority of the homeowners in Wild Meadows. The Homeowner's Association includes 189 of the tenants in its membership, but only 185 of them sought to be included in this action.

On November 10, 2014, December Corporation initiated the statutorily required meeting with Wild Meadows' tenants in order to discuss a proposed rent increase in excess of the CPI-U. December Corporation proposed a monthly rental increase of $45.74. This $45.74 increase included both the CPI-U amount that was based on the rate of 1.7% and an increase in excess of that amount for what December Corporation alleged were capital improvements and non-routine repairs. December Corporation and the Homeowner's Association did not resolve the matter after the statutorily required meeting. As a result, on November 12, 2014, December Corporation filed a petition with the Delaware Manufactured Home Relocation Authority (the "Authority") seeking arbitration of the dispute.

As a result, the Authority appointed an arbitrator who conduced an evidentiary hearing on February 12, 2015. The arbitrator heard evidence presented over longer than eight hours and then issued a decision on March 30, 2015. Thereafter, December Corporation appealed the decision to Superior Court and separately filed a complaint in the Court of Chancery challenging the standing of the Homeowner's Association to dispute the rent increase.[2] By stipulation of the parties, the Superior Court stayed the appeal pending a decision by Chancery Court regarding the Homeowners Association's standing to participate in the arbitration proceedings. The Court of Chancery subsequently held that the Homeowner's Association had standing[3]; and the Court

---

[2] *See December Corp. v. Wild Meadows Home Owner's Ass, and Delaware Man. Home Relocation Authority*, 2015 WL 9301813 (Del.Ch. Dec. 22, 2015).

[3] *Id.* at *8.

3

lifted the stay regarding the appeal.

Relevant to the appeal was the arbitrator's decision recognizing the CPI-U at 1.7% at the time of the requested increase. Furthermore, the decision examined and hinged on the Homeowner Association's claim that the alleged rehabilitation work by the landlord was required because December Corporation did not prudently plan or design the community to prevent poor drainage. Furthermore, at the hearing, the Homeowner's Association presented evidence that the City of Dover served notice on December Corporation regarding certain City Code violations. The arbitrator did not examine or make factual findings regarding some of the statutory factors listed in 25 *Del. C.* § 7042. The arbitrator did, however, make factual findings that there were certain Dover City Code violations. As a result of these findings, the arbitrator concluded that December Corporation acted irresponsibly. Since the landlord did not act proactively toward the safety and well-being of the homeowners, the arbitrator reasoned "it would be untenable that the homeowners should now be asked to pay for the *entirety* of the construction costs." Without further explanation, the arbitrator awarded none of the construction costs and did not award the 1.7% CPI-U increase. He did, however, awarded a $2.50 increase representing the Authority Fee.

### III.  STANDARD OF REVIEW

The parties contest the proper standard of review because this threshold issue, under the Act, remains unsettled. The Act has been amended twice since first passed, with both versions adjusting the Superior Court's standard of review of appeals from an arbitrator's order under the rent justification process. The version of the statute effective on July 15, 2014,[4] can be read to provide two possible standards of review.

---

[4] 79 Del. Laws, ch. 304 (2016). This version of the statute applies to the instant matter, since the next revision of the statute was only recently enacted on May 11, 2016. That version of the

4

They could fairly include (1) the substantial evidence and legal error standard, as applied in matters falling under the case decision provisions in Delaware's Administrative Procedures Act; or (2) a review of the record, *de novo*.

As the parties note, the "without a trial *de novo*" language was removed from one location in the statute in the July 2014 amendments.[5] However, in that version, Section 7043(c) of Title 25 maintains the Act's reference to "nonbinding arbitration proceedings."[6]

The General Assembly's removal of the language "without a trial *de novo*" in the statute at issue actually supports the argument that a *de novo* review was intended. December Corporation argues that what is intended is more akin to the earlier version of Superior Court Rule 16.1, where there was a trial *de novo* after a nonbinding decision of an arbitrator. A review "de novo" on the record, however, would differ from the former Rule 16.1 nonbinding arbitrations because it would bind a reviewing court to the record below, but not to the arbitrator's decisions or reasoning. That standard, if applicable, would be the same as used between Family Court commissioner's and the judge's of that Court.[7] There, the commissioners, if tasked by that Court, conduct a full trial, and issue a decision on the merits. Thereafter, on appeal

---

statute, post-dating the instant matter, seems to better align the standard of review with a substantial evidence review, although it still does not (1) state that expressly, or (2) mirror the language in Delaware's APA which has long been interpreted to be consistent with substantial evidence and legal error review.

[5] *Id.*

[6] *Id*.

[7] *See* Fam. Ct. Civ. R. 53.1(e)(providing "[f]rom an appeal of a commissioner's final order, the Court shall make a *de novo* determination of the matter (that is, the matter shall be decided anew by a judge), based on the record below.")

to a Family Court judge, the judge is not bound by any of the findings or conclusions of the Commissioner but is bound to the four corners of the trial record through its transcript and exhibits.

The substantial evidence standard, on the other hand, is much more deferential. It calls for the court to verify that the record contains a sufficient level of evidence (substantial evidence) and that the decision was free from legal error.[8]  Additionally, in contrast to the Superior Court's review of the evidence, legal issues decided by an agency are reviewed *de novo*.[9]  This standard is the one employed when reviewing administrative case decisions of agencies governed by  Delaware's Administrative Procedures Act. Since this standard is used in appeals of the enumerated agencies in the APA, it dominates Delaware's administrative law landscape.  Here, neither the Authority, or the arbitrators it utilizes, fall within the case decision subchapter of the APA.[10]  Accordingly, the text of the Act is the only source available to provide this Court's standard of review.

The General Assembly is free to organically include, within a statute such as this, an appeal mechanism and to include an appellate standard of review.  It did so here. The difficulty in interpreting the statute in this case, however, is that the language seems to effectively straddle both standards of review.

In two separate Superior Court decisions, the Court examined the first version of the Act and held that a *de novo* review, on the record was the appropriate standard

---

[8]  *Thompson v. Christiana Care*, 25 A.3d 778, 782 (Del. 2011).

[9]  *Whitney v. Bearing Const., Inc.*, 2014 WL 2526484, at *2 (Del. May 30, 2014).

[10] *See* 29 *Del. C*. Subch.  III, § 10142, and § 10161(b)(collectively providing what agencies' case decisions are subject to the APA's standard of review).

of review.[11]   In another appeal from an Authority appointed arbitrator, the Delaware Supreme Court addressed the relevant standard of review in a footnote in *Bon Ayre Land LLC v. Bon Ayre Community Association*.[12]   As December Corporation and the Homeowner's Association agree, the language in that footnote constituted *dicta*. Namely, the Supreme Court expressly declined to "reach any of the issues [raised] on appeal" other than to remand the mater directly to the arbitrator for the arbitrator to receive more evidence.[13]   Nevertheless, the Supreme Court, in commenting on the first version of the statute, and then the July 2014 version at issue here, noted that

> [a]s it applies here, the statutory amendment would suggest that any ultimate determination by the arbitrator of whether and to what extent a rent increase is justified should be given deference if based on substantial record evidence and not tainted by any error of law. That said, even the amended statute is less than ideally clear, and it would be helpful in the statute would explicitly incorporate a recognized form of judicial review.[14]

December Corporation counters that the Supreme Court's direction was based on a misunderstanding of the statute.  Both parties acknowledged at the oral argument that the General Assembly did not remove the term "nonbinding" from the statute.  As

---

[11] *See Tunnel Companies, LP v. Greenwalt*, 2014 WL 5173037, at *4 (Del. Super. Oct. 14, 2014)(holding that in the Act, "[t]he General Assembly specifically deviated from the standard of review traditionally applied to administrative agencies . . . Simply put, the Superior Court makes an independent decision. Superior Court does not affirm or reverse the arbitrator's decisions."); *see also Bon Ayre Comm. Ass. V. Bon Ayre Land, LLC*, 2016 WL 241864, at *4 (Del. Super., Jan. 22, 2016), *reversed in part by Bon Ayre Land LLC v. Bon Ayre Community Ass'n,* 133 A.3d 559(Del. 2016) (holding likewise that the Act "requires a *de novo* review by the Superior Court").

[12] 133 A.3d 559(Table)(Del.2016).

[13] *Id.* at *3.

[14] *Id.* at *3, *n.* 11.

7

December Corporation emphasizes, a reference to the proceedings being "nonbinding" remains in the statute in Section 7043. Namely, the Act maintains the direction that the authority appoint an arbitrator to "conduct nonbinding arbitration proceedings."[15]

While December Corporation's arguments are not without merit, the operative version of the statute provides that the Superior Court "shall address written and/or oral arguments of the parties as to whether the record created in the arbitration is sufficient justification under the Code for the community owner's proposed rental increase in excess of the CPI-U." [16] The Supreme Court examined and commented on both the standard of reviews in the initial statute and the legislative amendment adjusting the standard to the form at issue in this case. Although the Supreme Court did not expressly so hold, this Court will take direction from the Supreme Court in applying this standard of review. Moreover, while the Supreme Court recognized the ambiguity of the statute in the area of judicial review, it also remanded the case because the arbitrator had not fully examined relevant issues.[17]

Delaware administrative law predominantly applies the substantial evidence standard in Superior Court reviews of administrative decisions. Furthermore, the most recently enacted amendment to the statute from May 2016 adds the language directing the Superior Court to review "whether those decisions are free from legal error."[18] On balance because the Supreme Court has spoken on the issue (although in a preliminary context), the predominant administrative law standard throughout the State is

---

[15] 25 *Del. C.* § 7043(c).

[16] 79 Del. Laws, ch. 304 § 5 (2016).

[17] *Bon Ayre Land LLC*, 133 A.3d at *3.

[18] 80 Del. Laws, ch. 229, § 2 (2016).

substantial evidence, and the most recent corrective legislative amendment can only be reasonably read to reference substantial evidence review, the Court will apply that standard.[19]

In applying this standard, the function of the reviewing Court is to determine whether the [arbitrator's]decision is supported by substantial evidence and free from legal errors.[20] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[21] In reviewing an agency decision under this standard, the appellate court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[22] It merely determines if the evidence is legally adequate to support the agency's factual findings.

Furthermore, consistent with the level of review appropriate for agencies under the APA, the Court reviews such decisions for errors of law.[23] Errors of law include matters where a lower trial tribunal or agency "proceeds illegally or manifestly contrary to law."[24]

---

[19] The most recent May 2016 Amendment seems to more closely align the standard with substantial evidence review. Generally, when the General Assembly materially changes a statute, the rules of statutory construction presume that a change in meaning was intended. *Daniel D. Rappa, Inc. V. Engelhard*, 256 A.2d 744, 746 (Del. 1969). Here, a strict application of that principle would warrant the conclusion that the June 2014 version at issue did not provide for substantial evidence review. In this case, however, the better view is that the series of legislative amendments were intended as clarifications. This exception to the general rule is employed when, as here, the statute being amended is clearly ambiguous. 1A Sutherland Statutory Construction § 22:30 (7th ed.).

[20] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1221 (Del. 2015).

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *359 Associates, LLC v. New Castle County*, 2006 WL 2021623, at *7 (Del. Super. July 19, 2006) (citation omitted).

## IV. ANALYSIS

Here, the Court declines at this stage to render an opinion regarding the evidentiary basis for the arbitrator's decision. Rather, when examining the clear text of the law, the Court finds legal error. It remands the case to the arbitrator for the arbitrator to make findings regarding the Act's criteria. Specifically, the arbitrator's decision is reversed and remanded with instructions that the arbitrator make findings regarding the Act's (1) criteria for a rental increase in excess of the CPI-U, and (2) with direction to authorize a rental increase in the amount necessitated by the applicable CPI-U.

### A. The Arbitrator erred by denying the requested increase based upon equitable principles without examining the statutory criteria for the requested increase.

The arbitrator's essentially found that the landlord had unclean hands and that an equitable override of the statute was warranted based on his factual findings that the community owner violated health and safety ordinances. It is a basic concept of administrative law that "an agency cannot act outside its delegated authority."[25] Administrative agencies, when receiving delegation of either regulatory or quasi-judicial authority, are strictly limited by statute. Furthermore,

> [a]dministrative agencies are tribunals of limited jurisdiction, and there is no presumption in favor of jurisdiction of an administrative agency. As a general rule, agencies have only such adjudicatory jurisdiction as is conferred on them by statute . . . [A]n agency cannot confer jurisdiction on itself.[26]

---

[25] Charles H. Koch, 4 *Administrative Law and Practice* § 11.13, at 21 (3rd ed. 2010).

[26] 2 AMJur2d *Administrative Law* § 273, at 256 (2014).

Arbitrators or hearing officers in administrative proceedings have no inherent equitable jurisdiction or common law authority other than what is expressly granted them by statute. When delegated quasi-judicial authority, they are bound by the controlling statute to make decisions within the bounds of the authority granted by the General Assembly.

The Homeowner's Association argues that the Arbitrator did not exceed his authority and was justified in denying a rent increase based on the "totality of the circumstances." Nowhere in the statute, however, is there a provision permitting the arbitrator to override a requested increase based on his or her decision regarding the unclean hands of one of the parties. Rather, a plain reading of the statute provides that the community owner is entitled to raise the rent provided three criteria are met.[27] The statute's text mandates that three separate findings are required to justify a rent increase in excess of the CPI-U.[28] Namely, the community owner must prove the following conditions:

> (1) The community owner, during the preceding 12-month period, has not been found in violation of any provision of this chapter that threatens the health or safety of the residents, visitors or guests that persists for more than 15 days, beginning the day the community owner received notice of such violation;
> (2) The proposed rent increase is directly related to operating maintaining or improving the manufactured home community, and justified by 1 or more factors listed under [(3)] of this section; **[and]**
> [(3) a showing of one or more of the following factors]:
>> (1) The completion and cost of any capital improvements or

---

[27] For purposes of this appeal, December Corporation did not contest that the three separate criteria need be met. In fact, December Corporation's proffered evidence in the hearing below sought to address each of the criteria. The Homeowner's Association likewise offered evidence to contest the relevant criteria.

[28] *Tunnell*, 2014 WL 5173037, at *2.

rehabilitation work in the manufactured home community, as distinguished from ordinary repair, replacement and maintenance; **[or]**

. . .

(6) The need for repairs caused by circumstances other than ordinary wear and tear in the manufactured home community.[29]

The Homeowner's Association argues that since the word "may" is included in the statute, an arbitrator is free to award a rent increase or refuse to, based on the totality of the circumstances. Rather than providing that the arbitrator "may" raise a home owner's rent, the Act provides that "**a community owner** may raise a home owner's rent ..."[30] The inclusion of the word "may" in Section 7042(c) also does not give discretion to an arbitrator to deny an increase for reasons other than the statutory factors. That provision merely recognizes that not only are the first two criteria required but that at least one of the six (6) statutory factors included in subsection (c) is also required to approve a rent increase in excess of the CPI-U. A plain reading of the statute requires an arbitrator, appointed to conduct a hearing pursuant to this Act, to make a decision based on the itemized criteria in the Act.

In this case, the arbitrator committed legal error by not applying the statute's requirements for evaluating the proposed increase. Instead, he determined as a matter of equity, that the increase was not justified because of the community owner's unclean hands. Not only is this approach inconsistent with the legal authority granted to the arbitrator in this administrative matter, it violates the express requirements of the statute. Namely, the statue provides that "[t]he arbitrator will render a decision

---

[29] 25 *Del. C.* § 7042 (emphasis added).

[30] *Id.* (emphasis added).

12

employing the standards set forth in Section 7042 of this title." [31]

The arbitrator declined to make factual findings on the record addressing whether the asserted need for the increase involved capital improvements or rehabilitation work, as distinguished from ordinary repair, replacement and maintenance. The arbitrator's decision included the finding that the first criteria was met – that there was not a formal violation of Chapter 70 that threatens the health or safety of the residents or guests of Wild Meadows. Secondly, the parties do not contest that the second requirement for an increase (that the "proposed rent increase is directly related to operating, maintaining or improving the manufactured home community . . ) was met.

However, the arbitrator was also required to make a finding as to whether the increase was also justified by "1 or more factors listed under subsection (c) of this section."[32] Upon a finding that a proposed increase in excess of the CPI-U meets those three elements, the arbitrator would be required to authorize the increase. If at least one or more of those elements are not proven to a preponderance of the evidence, the arbitrator would be required to reject the requested increase in excess of the CPI-U. Accordingly, the matter is remanded to the arbitrator to provide factual findings regarding whether the statutory criteria for such an increase were met.

## B. Not granting a rent increase in the amount of the uncontested CPI-U rate was legal error.

The parties disagree regarding whether the CPI-U increase should have been granted. The arbitrator's decision acknowledged that the relevant CPI-U was 1.7%.

---

[31] 25 *Del. C.* § 7043(g).

[32] 25 *Del. C.* §7042(c).

It also recognized that this increase would provide for a $7.43 monthly increase out of the total increase sought. The arbitrator, however, did not otherwise address the requested CPI-U increase in his decision.

It is possible that the arbitrator did not address it because he recognized the automatic nature of that increase. Nevertheless, neither the arbitrator nor this Court has the discretion under the Act to deny an increase in the amount of the CPI-U. Each reference in the Act expressly provides for the statutory criteria to be weighed only in relation to "an amount greater than the average annual increase of the ... CPI-U"[33], or regarding justification for an "increase of rent in amount greater than the CPI-U."[34] There is no language in the statute that supports the argument that a community owner must gamble its choice to recover this inflationary adjustment when it seeks an increase in excess of that adjustment. The clear language of the statute provides for an automatic adjustment. Accordingly, the 1.7% CPI-U related increase must be included with or without any other potential increase.

## C. The Act provides that once capital costs are recovered, the amount of the increase in rent awarded based on the capital costs continues.

A significant issue remains as to whether a community owner is justified in maintaining a rental increase in perpetuity, after one time capital improvement charges are long since recovered. The community owner argues that the plain language of the statute requires a fixed and sustained increase, notwithstanding that the justification for that increase are one time outlays for what the community owner asserts are capital improvements. Section 7042 of Title 25, according to December Corporation, provides

---

[33]   25 *Del. C.* § 7042(a).

[34]   *Id.* at § 7042(c).

for a "raise [in] a home owner's rent . . ." if the three criteria are established, notwithstanding that some of the alternatives for meeting the third criteria include what could be one time capital improvement costs. Furthermore, December Corporation argues that the statute only limits the use of such one time costs to prevent the community owner from using it "as justification for any **future** rental increases".[35]

The Homeowner's Association counters that it would be inequitable and require an absurd interpretation of the statute to permit a one time cost to continue to generate a permanent increase in rent. Namely, the Homeowner's Association reasonably argues based on the intent of the statute that providing for a permanent increase in these situations could not have been intended by the General Assembly. From such an argument, it logically follows that if the projects are not shown to have ongoing costs associated with them, then after they are recovered, they should not generate an ongoing increase in rent.

This issue, however, is controlled by the clear language of the statute. When interpreting statutes passed by the General Assembly, the courts are constrained by their plain meaning.[36] A legislature is presumed to mean what it says. The Act provides that, if all criteria are met, then an "increase in rent in an amount greater than the CPI-U" is justified.[37] To the contrary, the Act does not provide that a "one time cost recovery rider" is justified. Likewise, the only language in the statute addressing any limitations regarding whether these one time costs can be included as "rent", provides a limitation regarding "future" rental increases. Namely, the statute provides

---

[35]   *Id.* (emphasis added).

[36]   *Doroshawn, Pasquale v. Nanticoke*, 36 A.3d 336, 343 (Del. 2012).

[37]   25 *Del. C.* § 7042(c).

15

[a] community owner also shall not utilize as justification for any **future rental increase** the cost of capital improvements or rehabilitation work, once that cost has been fully recovered by rental increases that were incorporated into a prior rental increase in excess of CPI-UI, where the prior rental increase was properly implemented under this subchapter.[38]

Had the General Assembly intended Section 7042(c)(1) or (c)(6) related increases to justify only a one time cost recovery rider then it must be presumed to have so provided. This Court, as an arbitrator making finding facts and conclusions of law, is bound by the plain language of the statute.

The Court recognizes that under some circumstances this could create the incentive for a community owner to engage in a constant cycle of never ending capital improvements, which after cost recovery, would provide for an increased rental stream for each separate capital improvement. Addressing such a concern, however, would be at the discretion of the General Assembly and not an arbitrator charged with implementing the statute, or a reviewing court charged with reviewing that decision.

## V.  Conclusion

In conclusion, the arbitrator's decision included legal error by not (1) addressing the statutory criteria, or (2) providing for the automatic CPI-U increase which is permitted upon community owner request. Accordingly, this matter is remanded to the arbitrator to make factual findings regarding the required criteria and to render a decision after making those findings. Furthermore, the CPI-U increase of $7.43 must be included either as the only rental increase or in addition to a potential increase in excess of the CPI-U.

**IT IS SO ORDERED**

/s/Jeffrey J Clark
Judge

---

[38] *Id.* at § 7042(emphasis added).