STRINE, Chief Justice,
for the Majority:
I. INTRODUCTION
The appellant, Murphy & Landon, P.A. (the “Firm”), disputes the decision of the Unemployment Insurance Appeal Board (the “Board”) finding that Chelsey Pernic, a paralegal at the Firm, had not been fired for just cause and was thus entitled to unemployment benefits. A Claims Deputy for the Department of Labor initially ruled for Pernic, and the Appeals Referee for the Department of Labor affirmed after preventing the Firm from submitting evidence about the full scope of Pernic’s alleged misconduct. The Board then affirmed the Appeals Referee’s decision, which the Superior Court affirmed once more in an effort to abide by the deferential standard of review that is required when reviewing decisions by the Board.
The Firm now appeals to this Court, arguing that the Board’s conclusions — that Pernic was discharged for a single violation of the Firm’s financial policy and that she was not given an adequate warning— were not supported by substantial evidence in the record. Relatedly, the Firm contends that this error resulted in large measure because the Firm was unfairly restricted from presenting evidence of the broader scope of Pernic’s poor job performance, including her lateness, disrespectful and uncooperative attitude, and shirking, in its hearing before the Appeals Referee. It argues that the Board did not remedy this error because, although the Firm was allowed to present evidence of Pernic’s cumulative misconduct in the Board hearing, the Board nonetheless concluded, without explanation, that Pernic was fired for a single incident of misconduct, a conclusion that was not supported by substantial evidence in the record.
Although our standard of review of a decision by the Board is deferential, it is not altogether without teeth. In this case, the Board’s conclusions were not rationally grounded in the record, and thus, we need not defer to them. For one, the Board erred by deferring to the Appeals Referee’s conclusion that the cause of Pernic’s termination was her decision to pay an invoice without permission when that conclusion was inconsistent with substantial, unrebutted evidence, including testimony that Pernic had been warned about her substandard performance in several areas, and her termination letter, which stated that Pernic was terminated for six different types of misconduct. Unlike the Appeals Referee, the Board at least heard the evidence that Pernic was fired for cumulative misconduct, but it then failed to explain why it gave that evidence no weight at all, despite Pernic’s failure to contradict it. In other words, although the Board tried to cure the Appeals Referee’s improper limitation of the record, it then failed to give any rational consideration to the evidence before it and deferred to the original decision made on what it knew to be an improperly limited record.
The Board’s decision that Pernic did not receive a clear warning that she could be terminated for another instance of misconduct is also unsupported by substantial evidence in the record. The uncontradict-ed record evidence shows that Pernic received a warning that her insubordination and poor performance could lead to her termination, but she continued to act disrespectfully and was therefore terminated. The Firm should not be penalized because it did not anticipate the precise form that Pernic’s last act of misconduct would take. Nor should it be penalized for allowing *1218 Pernic time to improve her deficient performance. To do so would create a perverse incentive for an employer to discharge an employee at the first instance of poor performance in order to avoid the outcome that the Firm suffered here. Accordingly, we reverse and remand the judgment of the Superior Court affirming the Board’s decision.
II. FACTUAL AND PROCEDURAL HISTORY
Pernic worked as a paralegal at the Firm from 2009 to 2010, and again from 2011 to 2012. Linda Ferguson, Pernic’s aunt and the Firm’s supervising paralegal, recommended Pernic for the position. Pernic was terminated on May 11, 2012, after several months of poor performance. Her termination letter stated that she had been terminated because of her chronic lateness;[1] uncooperative attitude; rude behavior toward Frank Murphy, her supervising attorney; refusal to help with overflow work; and refusal to work overtime, as required. The letter also stated: “[y]ou fail to take supervision and consequently, you take it upon yourself to make decisions and take actions without first checking with your supervising attorney. Your most recent egregious example is your processing of an expert deposition fee for an opposing party’s witness in the amount of $3,000.”[2]
On May 13, 2012, Pernic filed a claim for unemployment benefits with the Delaware Department of Labor’s Division of Unemployment Insurance. In her claimant fact-finding questionnaire, Pernic stated that most of the reasons for her termination were not brought to her attention and that those that had been brought to her attention had been corrected. Pernic also indicated that she had not been told that her job was in jeopardy. The Firm opposed her application, claiming that it had just cause to terminate Pernic, and submitting a copy of her termination letter. The Firm also stated that Pernic was warned in December 2011 that her job was in jeopardy due to her attendance and attitude problems.
The Claims Deputy for the Department of Labor interviewed Pernic, who denied that she was frequently late for work and took long lunches.[3] She also claimed that she “requested hundreds of payments” for invoices, that she did so “all the time” as “part of [her] job,” and was not aware that she was required to get approval from anyone.[4] When' asked if she had been warned about the conduct that led to her termination, Pernic admitted that she had a meeting with her supervisors, Murphy and Ferguson, in which she was warned that she “needed to change the way [she] spoke to [Murphy].”[5] Nonetheless, the Claims Deputy concluded that the Firm had failed to meet its burden of showing just cause for Pernic’s termination because there was no evidence that Pernic’s behavior rose to the level of wanton or willful misconduct. The Firm appealed the Claim Deputy’s decision.
*1219 A hearing before the Appeals Referee was held on August 13, 2012. Although the Firm stated that there were multiple reasons for Pernic’s termination, the Appeals Referee directed the parties to focus only on the last incident leading'to Pemic’s termination — Pernic’s unauthorized payment of $3,000 to an opposing party’s expert — and prohibited the Firm from presenting evidence about the wider scope of Pernic’s poor performance. The Appeals Referee also prohibited the Firm from cross-examining Pernic about her statements denying that she was never late to work, never took long lunches, and was never warned that she could be terminated.
The Appeals Referee heard testimony from (i) Pernic’s supervising attorney, Frank Murphy; (ii) Pernic’s aunt and the Firm’s supervising paralegal, Linda Ferguson; (iii) two other Murphy & Landon legal assistants; and (iv) Pernic. Murphy testified that he had received and intended to oppose the $3,000 invoice from the other side’s expert witness because he believed it was exorbitant. He stated that Pernic took the invoice, which was addressed to him, from his inbox and authorized payment without his knowledge. He also testified that Pemic’s statement that she had routinely approved such invoices on her own was not true, and that paralegals were not permitted to approve payments without permission.
Ferguson testified that the Firm had an unwritten policy requiring a supervising attorney to approve the payment of invoices, and that as far as she knew, all of the legal assistants, including Pernic, were aware of the policy. She testified that when she had previously worked as a personnel manager at another small law firm, the firm did not put policies of this kind in writing. Ferguson also testified that she had recommended to Murphy that he fire Pernic. Two other legal assistants testified that they were trained to clear all payments with an attorney before making them, and that they had never made a payment without first seeking approval.
In her testimony, Pernic continued to contend that she regularly arranged for payment of invoices without obtaining attorney approval and that she was not informed of a firm policy requiring attorney approval of invoice payments until after she had arranged for payment of the disputed invoice. .
On August 27, 2012, the Appeals Referee issued a decision in Pernic’s favor, finding that the Firm had failed to provide evidence showing that Pernic received notice of the invoice approval policy. The Appeals Referee thus concluded that the Firm had not proven that Pernic’s actions arose to willful or wanton misconduct, because such a finding generally requires that the employee receive an unequivocal warning that her conduct could lead to dismissal.
The Firm appealed the decision to the Board, arguing that the Appeals Referee had erroneously restricted the Firm from presenting evidence about the other incidents .and issues that were the cause of Pernic’s termination. The Board heard the Firm’s appeal on February 6, 2013 and permitted the Firm to submit evidence of the full scope of Pernic’s misconduct leading to her termination. That is, the Board appears to have tried to cure the Appeals Referee’s refusal to hear relevant evidence relating to all of the reasons that Pernic was terminated. But that cure was less than effective for several reasons. One key reason is that at the Appeals Referee hearing, the Firm was denied the chance to cross-examine Pernic about relevant topics, including her statements to the Claims Deputy that she had never been late to work, that she did not take long lunches, and that she acted uncooperative *1220 ly. That is because Pernic did not appear at the Board hearing. Instead, the only evidence presented at the hearing were Pernic’s time records[6] and testimony from Firm employees indicating that Pernic was insubordinate, and had received a clear warning that she could be terminated but continued to perform poorly. For example, Deborah Abbott, a Murphy & Landon legal assistant who' worked near Pernic, testified that Pernic was usually late for work, took long lunches, refused to help with overflow work, refused to work overtime, and was rude and disrespectful to Murphy. She testified that Pernic was warned about her lateness.
Likewise, Murphy testified that Pernic was underperforming, and that he and Ferguson had met with Pernic to go over her job deficiencies, inform her of what was required of her, and make clear that she would be fired if she did not improve.[7] Pernic had admitted that this meeting occurred in her interview with the Claims Deputy, although she did not acknowledge that she was warned that she could be terminated. According to Murphy’s unre-butted testimony before the Board, Pernic’s behavior worsened after this meeting.[8]
In response to a Board member’s question regarding why the Firm did not fire Pernic sooner, Murphy stated that he was worried about creating additional problems for Ferguson and the Firm’s supervising paralegal, who was suffering from multiple sclerosis, and that Pernic had been an acceptable employee until the last six to eight months of her employment. Another Board member asked if Pernic was given an unequivocal warning that she had to improve or she would be terminated. Murphy testified in response that he and Ferguson gave such a warning to Pernic “probably a couple months before the termination.” [9] Ferguson did not testify at the Board hearing, but the Board had access to her testimony before the Appeals Referee, which was entirely consistent with Murphy’s.
On March 11, 2013, the Board issued its decision affirming the decision of the Appeals Referee and awarding unemployment benefits to Pernic. The Board acknowledged that, “[i]t is clear that the Claimant was warned that she could lose her job, if she did not improve.” [10] The Board also stated that although the invoice payment incident by itself was insufficient evidence of willful and wanton conduct, “the Employer presented evidence of conduct that ... could constitute just cause for discharge.”[11] Nonetheless, the Board was uncertain whether the Firm’s warning was sufficient:
The Employer’s case before the Board relied on cumulative misconduct as a basis for discharge, whereas the case *1221 before the Referee seemed to rely on a single incident. Which conduct formed the basis for the warning? If, as it now appears, the Claimant was warned about lateness, long lunches, and other performance issues, and then fired for the unauthorized payment of an invoice, there is a disconnect between the warning and the discharge.[12]
Of course, the only reason that the Firm focused its case before the Appeals Referee on the single incident of misconduct was that the Appeals Referee forced it to do so, over the Firm’s objections.
After thus determining that the Firm’s other documented reasons for firing Pernic were “disconneet[ed]” to her final instance of poor performance, and that Pernic had been given a “mixed message” about what conduct the Firm would tolerate because of its desire to protect Pernic’s aunt, the Board concluded the Firm did not have just cause to fire Pernic.[13] In other words, rather than giving the Firm credit for patiently dealing with Pernic’s subpar performance, and only terminating her after she had been given ample time to improve, the Board ignored the cumulative nature of Pernic’s failings, acted as if her final act of misconduct was an aberration, and concluded that her termination was unjust.
The Firm then appealed to the Superior Court, who affirmed the Board’s decision in an order and opinion dated July 11, 2014.[14] In so holding, the Superior Court noted that the standard of review of the Board’s decision — whether the ruling was supported by substantial evidence and free from legal error — is “deferential” and thus, “the Board’s decision will only be modified in extreme circumstances.”[15] The Superior Court then did its best to adhere to that deferential standard of review. It found that the Firm was given a fair hearing before the Board because the Firm was not restricted from presenting evidence of Pernic’s misconduct, and the Board considered that evidence when rendering its decision. It found that the Board’s conclusions that the warning given to Pernic was disconnected from the cause of her firing and that Pernic may have received a “mixed message” were supported by the evidence in the record.[16] The Superior Court concluded that it would not “reevaluate how the Board weighed the evidence before it.”[17]
This appeal followed.
III. ANALYSIS
This Court’s review of the Superior Court’s opinion and order is limited to the question of whether there is substantial evidence in the record to support the Board’s findings and whether such findings are free from legal error.[18] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[19] Like the Superior Court, this Court considers the record in the light most favorable to the party prevailing on the Board’s appeal, here, Pernic.[20] This Court does not weigh the evidence, determine questions or credibility, or make its own factual findings.[21]
*1222 An employee who is discharged for just cause is disqualified from receiving unemployment benefits.[22] Generally, there is just cause if an employee commits a “willful or wanton act or pattern of conduct in violation of the employer’s interest, the employee’s duties, or the employee’s expected standard of conduct.”[23] “If an employer consistently tolerates willful or wanton misconduct ... the employer may not be justified in firing employees without first warning them that their conduct no longer is acceptable.”[24] The employer bears the burden of proving by a preponderance of the evidence that the employee was terminated for just cause.[25]
On appeal, the Firm argues that the Board’s conclusions — that Pernic was discharged for a single violation of the Firm’s financial policy and that Pernic was not given an adequate warning before she was terminated — were unsupported by the record afid not the product of an orderly and logical deductive process. The Firm argues that it was unfairly restricted from presenting evidence of Pernic’s misconduct in its hearing before the Appeals Referee, and that this error was not remedied on appeal to the Board because the Board affirmed the Appeals Referee’s conclusion that Pernic was fired for a single act of misconduct against the weight of uncontra-dicted evidence in the record.
Pernic did not appear at the Board hearing, and thus, the Finn was not able to cro.ss-examine her about her statements to the Claims Deputy that she had not engaged in misconduct and had not received an adequate warning. Pernic has also not taken the time to file an answering brief to us, leaving us without any response to the Firm’s arguments, even though this Court granted Pernios request for an extension to allow her an additional month to file her answering brief.[26] After the expiration of the later filing deadline, this Court allowed Pernic an additional week to file her brief and informed her that her failure to respond could result in an order against her or the imposition of a penalty under Supreme Court Rule 33, but Pernic still failed to submit a response.[27]
Even though our standard of review of Board decisions is deferential, it is not meaningless, and we need not defer to findings that are not rationally supported by substantial evidence in the record.[28] As important, our application of this deferential standard of review is influenced by the undisputed legal error committed by the Appeals Referee in inappropriately restricting the issues before her. Therefore, in addressing whether the Board’s decision is rationally supported by the record, we must consider whether the Board in fact redressed the legal error committed by the Appeals Referee, not only by allowing the relevant evidence that the Firm was restricted from presenting initially to be heard, but by giving rational consideration *1223 to that evidence, the failure of Pernic to rebut it, and the improper limitation on the Firm’s ability to cross-examine Pernic in reaching its own decision. In other words, as part of determining whether to defer to the Board’s fact findings, we cannot ignore the legal error committed at the original hearing, but must consider- whether that error was remedied adequately by the Board in hearing the Firm’s appeal.
Here, we find that the Board’s decision to defer to the Appeals Referee’s conclusion that Pernic was fired for a single incident of misconduct, which was based on the Appeals Referee’s erroneous limitation of the record,- was contradicted by unrebutted testimony and documentary evidence. Rather than ensuring that it reviewed the record fully to correct the improper evidentiary limitations imposed by the Appeals Referee, the Board instead disregarded large elements of the record and largely deferred to the decision of the Appeals Referee, which was based on her own improperly restricted review of the relevant evidence and issues.[29] The Board could not simply ignore the abundant unrebutted evidence supporting the Firm’s rendition of events without reasoned explanation.[30] For the same reason, the Board’s finding that Pernic did not receive an adequate warning that she would be terminated if she continued to engage in misconduct is also unsupported by the uncontradicted evidence in the record.
i. Unrebutted Evidence Was Presented That Pernic Was Fired For Cumulative Misconduct, Not a Single Incident
Although the Firm sought to introduce evidence that Pernic was fired for cumulative misconduct, including chronic lateness, an unwillingness to assist others, and a disrespectful attitude toward her supervisors, the Appeals Referee restricted the Firm from presenting such evidence in its hearing. Instead, the Firm was limited to presenting evidence related to the incident of misconduct that immediately preceded Pernie’s termination: her unauthorized payment of a $3,000 invoice.
In allowing. the Firm to submit new evidence in its hearing before the Board, the Board implicitly acknowledged that the Appeals Referee improperly limited her inquiry to focus only on that incident. We agree with the Board that the Appeals Referee erred by limiting the record, when substantial evidence, including Pernic’s termination letter, suggested that she was fired for misconduct that had occurred over several -months. And although the Board attempted to cure the Appeals Referee’s improper restriction of the record, the Board then deferred to the Appeals Referee’s conclusion that Pernic was fired for a single instance of misconduct without any explanation.[31] That conclusion was *1224 not rationally supported by the evidence before the Board. For example, Pernic’s termination letter stated “the reasons for your termination are many” and then listed six specific types of misconduct.[32] Several witnesses also confirmed that Pernic was terminated because of her inadequate performance over six to eight months.
The Board made no attempt to address the Firm’s substantial and uncontradicted evidence that showed that Pernic was terminated for her cumulative misconduct, nor did it explain why it deferred to the Appeals Referee’s conclusion that Pernic was fired for a single incident. Thus, this Court cannot defer to the Board’s conclusion because it does not reflect a rational consideration of the record evidence and it compounded, not cured, the Appeals Referee’s original error: improperly restricting the Firm’s ability to present relevant evidence.[33]

ii. Uncontradicted Evidence Supports the Conclusion That Pernic Received a Clear Warning That She Could Be Terminated

In addition, there is substantial, un-contradicted record evidence showing that Pernic received a clear warning that she would be terminated if she continued to engage in misconduct. As the Board itself stated, “[i]t is clear that the Claimant was warned that she could lose her job, if she did not improve.”[34] Nonetheless, the Board determined that there was a disconnect between the Finn’s warning, which focused on Pernic’s “lateness, long lunches, refusal to work extra hours, and other performance issues,” and her ultimate termination after she paid an invoice without authorization.[35]
We cannot defer to this conclusion for two reasons. First, it is grounded in the assumption that Pernic was fired for a single incident of misconduct, which, as discussed, is not rationally supported by the evidence in the record. Second, even if we were to assume that Pernic was fired solely because she paid an invoice without permission, substantial evidence suggests that the Firm’s warning put her on notice that an act involving lack of proper respect toward her supervisors could lead to her termination.[36]
As the Superior Court noted, the inquiry into whether a warning is sufficient to put the employee on notice is “very fact specific.”[37] For example, in Optima Cleaning Systems, Inc. v. Unemployment Insurance Appeal Board, the Superior Court explained:
[A]n employer’s warning is not necessarily limited to putting the employee on notice of the impropriety of the specific conduct that led to the warning. For example, if an employee is cited for failing to wear a tie, he may be unsuccessful in arguing that he did not receive *1225 a warning for subsequently failing to shine his shoes. This is especially true if the employee was aware that he was obligated to shine his shoes. Arguably, the two violations are different. However, both violations involved the employee’s attire, and the employee had notice that improper attire was unacceptable.[38]
The Board’s finding that the Firm was required to inform Pernic what the “trigger” for her discharge would be “in terms of timing, conduct, or failure to improve” is an unreasonable requirement and contrary to Delaware law. An employer need not specify the types of conduct that could lead to termination so long as the employee is aware that certain types of conduct are improper and prohibited.[39] The employer is only required to show that the employee was warned that a general category of misconduct “was unacceptable.” [40]
Here, the Firm presented abundant, un-contradicted evidence that Pernic was sufficiently warned that her behavior was unacceptable. Although the Appeals Referee erroneously refused to hear evidence from the Firm about anything other than the invoice incident, Pernic admitted to the Claims Deputy that she had received a warning about her subpar job performance. On appeal, the Board tried to cure the Appeals Referee’s error by allowing the parties to present evidence’ of Pernic’s other misconduct leading to her termination. Accordingly, at the Board hearing, Murphy testified that he had warned Pernic clearly and unequivocally that she would be terminated if she continued to engage in misconduct and insubordination. A paralegal, Deborah Abbott, confirmed that Pernic had been warned about her bad behavior. But because Pernic did not attend the Board hearing, she was not subject to cross-examination by the Firm or the Board about her version of events. Nor has Pernic submitted an answering brief before this Court, and as a result, has not presented evidence contradicting the Firm’s evidence that she was given a clear warning that her conduct could result in termination.
Thus, the record includes substantial, uncontradicted evidence that Pernic was warned that her uncooperative attitude and insubordination toward her supervising attorney was unacceptable, and that if she continued to act inappropriately, she *1226 would be tefminated. Her decision to take mail from her supervising attorney’s inbox and pay a $3,000 invoice without seeking his permission is the same type of disrespectful conduct that she was warned not to continue. But the Board gave no weight to this uncontradicted evidence, and instead faulted the Firm for failing to predict that Pernic’s next act of misconduct would involve taking an invoice about of Murphy’s inbox and paying it without authorization. The Board’s insistence that the Firm be Nostradamus was unreasonable and imposes an inequitable burden on employers.
Likewise, the Board seems to have reasoned that because Pernic’s misconduct justified the Firm in terminating her earlier, the Firm did not have just cause for doing so later, when yet another example of her poor performance was discovered. The Board thus penalized the Firm for its decision to be patient with Pernic, who had been an acceptable employee before the last few months of her employment, out of a desire to be sensitive to Pernic’s aunt. The Board’s reasoning thus creates a perverse incentive for employers that risks harm to employees. Under the Board’s approach, an employer will find it safer to fire an employee immediately upon the first instance of misconduct rather than give- the employee an opportunity to redeem himself. We decline to endorse such an incentive scheme.
Because the Board’s conclusions were not supported by substantial evidence, and were the result-of the Appeals Referee’s error in limiting the evidentiary record, we reverse the order and opinion of the Superior Court and remand to the Board for a hearing consistent with this opinion. In view of Pernic’s refusal to participate before the Board or this .Court, the Board shall enter a judgment in the Firm’s favor if she does not appear or participate on her own behalf and subject herself to cross-examination in .any further proceedings. Although Pernic has no duty to obtain counsel, she is bound to either prosecute her claim or withdraw it.

. The letter explained that despite her chronic lateness, she would leave at 5:30 PM, and thus was not working a full day,

. App. to Opening Br. at 22 (Termination letter dated May 11, 2012) (emphasis added).

. Pernic represented herself pro se in the proceedings before the Claims Deputy and the Appeals Referee.

. App. to Opening Br. at 8 (Unemployment Insurance Fact-Finding Sheet).

. App. to Opening Br. at 5 (Unemployment Insurance Claimant Fact-Finding).

. The time records showed that in January and February 2012, Pernic did not work a full workday, and that she often reported six hours or less of work per day. Once she was warned that her job was in jeopardy, she would add an entry for "non-billable” time to give the appearance that she was working a seven-and-a-half hour day, still short of her eight-hour requirement.

. The date of this meeting is unclear from the record. In his testimony before the Board, Murphy stated that the meeting occurred a few months before her termination. Pernic’s fact-finding questionnaire referred to a meeting with Murphy and Ferguson in late September or early October 2011. The Firm submitted papers referring to a meeting between Pernic, Murphy, and Ferguson in December 2011.

. See App. to Opening Br. at 118 (Tr. of Admin. Hearing, Feb. 6, 2013).

. App. to Opening Br. at 123 (Tr. of Admin. Hearing, Feb. 6, 2013).

. App. to Opening Br. at 130 (Decision of the Unemployment Insurance Appeal Board).

. Id.

. Id.

. Id.

. Murphy & London, P.A. v. Pernic, 2014 WL 3400997 (Del.Super.Ct. July 11, 2014).

. Id. at *3.

. Id. at *2.

. Id. at *5.

. Thompson v. Christiana Care Health System, 25 A.3d 778, 782 (Del.2011).

. Oceanport Indus., Inc. v. Wilmington Stevedores, Inc., 636 A.2d 892, 899 (Del.1994).

. Thompson, 25 A.3d at 782.

. Id.

. 19 Del. C. § 3314(2).

. Avon Prods., Inc. v. Wilson, 513 A.2d 1315, 1317 (Del.1986).

. Moeller v. Wilmington Savs. Fund. Soc'y, 723 A.2d 1177, 1179 (Del.1999).

. Edmonds v. Kelly Servs., 2012 WL 4033377, at *2 (Del. Sept. 12, 2012).

. Murphy & London, P.A. v. Chelsey F. Pernic, No. 430, 2014 (Order) (Del. Nov. 24, 2014).

. Because Pernic did not submit an answering brief, this Court determined that the matter would be decided on the basis of the opening brief and the record.

. See Boggerty v. Stewart, 14 A.3d 542, 550 (Del.2011) ("Where the findings are not supported by substantial evidence, or are not the product of an orderly and logical reasoning process, then the decision under review cannot stand.”) (internal quotation marks omitted).

. Cf.Boulevard Elec. Sales v. Webb, 428 A.2d 11, 15 (Del.1981) (reversing and remanding to the Superior Court to remand to the Board when the Board improperly limited the scope of evidence to be introduced at its hearing).

. See Watson v. Wal-Mart Assoc., 30 A.3d 775, 779 (Del.2011) ("Although the Board is the fact-finder, it is not free to ignore this evidence if it is undisputed.”); see also Pusey v. Natkin & Co., 428 A.2d 1155, 1157 (Del.1981) (holding that there was not substantial evidence to support the Industrial Accident Board’s ruling when the claimant produced unrebutted evidence "which the Board could not ignore”); Tatten Partners, L.P. v. New Castle Cnty. Bd. of Assessment Review, 642 A.2d 1251, 1258 (Del.Super.1993), aff'd sub nom. New Castle Cnty. v. Tatten Partners, L.P., 647 A.2d 382 (Del.1994) (holding that “the Board acted arbitrarily and capriciously in ignoring the competent evidence brought before it by” the claimant).

. App. to Opening Br, at 131 ("If, as it now appears, the Claimant .was warned about ... [her performance issues] and then fired for the unauthorized payment of an invoice, there is a disconnect.... ”).

. App. to Opening Br. at 22.

. Cf. 19 Del C. § 3320(a) ("The [Board] shall remand a case to the appeal tribunal to supplement the existing evidence when it is determined to be insufficient to form a substantial basis for a decision.”).

. App. to Opening Br. at 131.

. Id.

. We note that Pernic’s testimony that as a paralegal, she was entitled to approve invoices for her supervising attorney is not intuitively plausible. It would be odd for a law firm to allow any legal assistant, without attorney supervision, to approve an invoice that would ultimately be paid by a client. Moreover, in this instance, the invoice was addressed to Murphy and placed in his inbox. Pernic took it out of his inbox without permission. Presumably, it was put in Murphy’s inbox so that he could consider how it should be addressed, and if and to what extent it should be challenged or paid.

. Murphy & London, P.A. v. Pernic, 2014 WL 3400997, *5 (Del.Super.Ct. July 11, 2014).

. 2010 WL 5307981, at *4 (Del.Super. Dec. 7, 2010) (emphasis added). The two cases that the Superior Court relied on to find that the Firm’s warning was inadequate are distinguishable from this case. In Ortiz v. UIAB, this Court concluded that the employer did not have just cause to dismiss an employee for lateness because he was never warned that his lateness, which had been condoned for several months, would result in his termination. 317 A.2d 100, 101 (Del.1974). Under the “exceptional” circumstances of that case, this Court found that “a single unambiguous warning that proscribed conduct will not be tolerated, and discharge would be the consequence,” was required. Id.
In Weaver v. Employment Security Commission, the Superior Court similarly determined that an employer had not shown just cause to fire an employee because it did not provide any evidence showing that the employee was warned that he would be fired because of his lateness. 274 A.2d 446 (Del.Super.Ct.1971). Here, by contrast, the uncontradicted evidence before the Board showed that Pernic received a warning that her behavior could lead to termination.

. See Optima Cleaning Systems, Inc. v. Unemployment Ins. Appeal Board, 2010 WL 5307981, at *3 (Del.Super. Dec. 7, 2010) (internal citations omitted) ("[Bjecause it is unlikely that an employer has created policy that prohibits the gamut of unacceptable employee conduct, an employee may be terminated, with just cause, for conduct that generally is adverse to the employer's interest, the employee’s duties, or the employee’s expected standard of conduct.”).

. Id. at *4.