# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TESLA INDUSTRIES, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNEMPLOYMENT INSURANCE | ) | |
| APPEAL BOARD, DELAWARE | ) | C.A. No. N18A-09-007 CLS |
| DEPARTMENT OF LABOR, and | ) | |
| DAWOEN WILSON, | ) | |
| | ) | |
| Appellees. | ) | |

Date Submitted: May 1, 2019
Date Decided: August 21, 2019

*Upon Appellant's Appeal of the Decision from
the Unemployment Insurance Appeal Board*
**AFFIRMED.**

Scott L. Silar, Esquire, Reger Rizzo & Darnall LLP, Wilmington, Delaware, Counsel for Appellant.

Daniel C. Mulveny, Esquire, Department of Justice, Wilmington, Delaware, Deputy Attorney General.

**SCOTT, J.**

## Introduction

This is an appeal from the Unemployment Insurance Appeals Board ("UIAB" or "Board"). Appellant-Employer, Tesla Industries, Inc., is seeking a review of the decision by the Board that it lacked just cause to terminate Claimant Dawoen Wilson. Having reviewed Appellant's submissions and the record below, the Court concludes that the Board's decision must be **AFFIRMED**.

## Background

*Procedural History*

From April 24, 2017 to May 30, 2018, Claimant worked full-time for Appellant as a shipping and receiving assistant. Appellant is a government contractor. On September 5, 2017, Claimant received a written warning for leaving a package on the loading dock. Claimant received a second written warning on February 13, 2018 for calling in after his shift had begun to inform Appellant that he would be late. Thereafter, on May 16, 2018, Claimant received a final written warning for failing to ship a charging cord with a customer's equipment. The final warning provided notice to Claimant that any further mistakes in shipping would result in his discharge. Less than a week later, Claimant was terminated for allegedly shipping a unit on May 21, 2018 that did not match the customer's order.

Claimant filed for unemployment benefits shortly after he was fired. The Claims Deputy approved his claim after determining that Appellant discharged

2

Claimant without just cause.[1] Appellant timely appealed on the basis that there was just cause to discharge Claimant and therefore he is ineligible to receive unemployment benefits. After a hearing on the issue, the Appeals Referee affirmed the Claims Deputy's decision, finding that "since Employer did not provide written evidence that the mistake was made after the issuance of the final warning, the tribunal cannot conclude that the Claimant engaged in willful or wanton misconduct."[2] Appellant appealed the Appeals Referee's decision to the UIAB and, after another hearing on the matter, the Board affirmed. Appellant now appeals the Board's decision to this Court.[3]

*The Board's Hearing*

At the hearing, Kevin Roberts, the shipping manager at the time of the incident, and Jessica Roberts, an inside sales customer service manager, testified on Appellant's behalf. Ms. Roberts testified that when Appellant receives a customer's order, it is assigned an order number for purposes of internal tracking and billing and then a "work order" is created. A work order identifies details of the order including the date the order was received, the model number for the requested unit and any

---

[1] R. at 7.

[2] R. at 15.

[3] The State of Delaware on behalf of the UIAB notified the Court that it did not intend to take a position on the merits of Appellant's appeal. D.I. 7 (Feb. 1, 2019); *see Wilmington Trust Company v. Barron*, 470 A.2d 257, 261 (Del. 1983).

3

associated cables, as well as the respective quantities of those items.[4] A work order also functions to identify which orders are scheduled to be shipped that day.[5] A copy of each work order is provided to the shipping and receiving department.[6] Claimant was responsible for fulfilling each work order.

Mr. Roberts testified that the assembly process for each unit is tracked, initialed, and dated "in-process unit build sheet" ("build sheet") at every step.[7] The final step before the unit is transferred to the shipping department is the "QC tests." The QC test entails a final inspection of the unit to ensure it adheres to the customer's order.[8] Once completed, the QC test on the build sheet is signed and dated before the unit is boxed and shipped.[9] According to Mr. Roberts' testimony, no unit can be shipped or boxed until it receives a final inspection.[10] Ms. Roberts reiterated that before any unit is shipped or boxed, it must have undergone a final inspection.[11] To fulfill a work order, Claimant was required to visit the QC area and write down the serial number for the listed unit(s).[12] After recording the serial number, Claimant

---

[4] R. at 144-45.
[5] Id. at 132.
[6] Id. at 145.
[7] Id. at 135-36.
[8] Id. at 138.
[9] Id.
[10] Id. at 137-38.
[11] Id. at 141.
[12] Id. 156-57.

4

was then responsible for providing the serial number to Ms. Roberts, which she then records on the order's invoice.[13]

Ms. Roberts reviewed the build sheet for the May 21 order and testified that the build sheet reveals the order received a final inspection on May 21, 2018, which also indicates the date the order was eligible to be boxed and shipped.[14] Immediately below that, next to "Packing/Shipping," is another signature dated with the same date.[15] Mr. Roberts testified that Claimant was the only individual working in the shipping department on May 21.[16] Ms. Roberts testified that though the serial number Claimant provided to her for the order in question was the correct serial number for that particular work order, Claimant selected the wrong unit for shipment.[17]

*The Board's Written Decision*

In its decision that became final on September 29, 2018, the Board noted that it considered the evidence presented during the hearing "[i]n addition to the evidence presented to the Referee, the Referee's Decision, and Employer's Notice of Appeal."[18] In affirming the Referee's decision, the Board observed:

---

[13] *Id.* at 157.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 136-37.
[17] *Id.* at 157-58.
[18] *Id.* at 109.

5

Employer has not met its burden to show there was just cause to terminate Claimant for making a mistake on May 21. At the hearing, while they alleged he did it, none of Employer's witnesses actually saw Claimant select the incorrect unit. The Board finds this evidence insufficient to show Claimant made the alleged mistake in selecting the wrong unit.

The Board also believes Claimant's testimony that Employer's shipping procedures leave a lot of room for error. This testimony is supported by the admitted lack of adequate controls to ensure the correct product was selected at the outset before it is shipped.

Based on these findings, the Board concludes that Employer failed to show by a preponderance of the evidence that there [sic] Claimant selected the wrong unit that was shipping on May 21. Employer lacked just cause to terminate Claimant for the May 21 misshipment incident.[19]

## Appellant's Assertions

Appellant argues that the Board's decision is a clear error of the law and is not supported by the evidence of the record. According to Appellant, the evidence that the order was boxed no earlier than May 21 as established by the QC check on May 21, the company invoice with a shipment date of May 21, and the Fed Ex freight bill dated for the same day demonstrates that the Board committed legal error when it held Appellant failed to show by a preponderance of the evidence Claimant was responsible for the May 21 shipping error.[20] Appellant claims that rather than considering its documents and witnesses' testimonies proving that the only date the wrong shipment could have occurred was May 21, 2018, the Board relied upon the

---

[19] *Id.* at 111.
[20] Appellant's Op. Br. at 10-12.

6

absence of any eyewitnesses who saw Claimant box the wrong unit and Claimant's testimony that he could not say whether he did or did not select the incorrect unit.[21]

Appellant also argues that the testimony of the witnesses and/or documentation in the record indicates the Board's decision is unsupported by substantial evidence.[22] Apart from that, Appellant points to the change in Claimant's position from his testimony given before the Claims Deputy, the Referee, and the Board where he respectively submitted: (i) the incident occurred before he received his final warning on May 16, (ii) Appellant did not present any written evidence that the shipping error occurred on May 21, and (iii) the incident was Appellant's fault because its shipping procedures leave a lot of room for error.[23] From this, Appellant contends that the essence of Claimant's argument is that even if he did make the shipping error, Appellant is really to blame and the discharge was unfair.[24] Lastly, Appellant argues that although the Referee found insufficient evidence showing the mistake was made on May 21, 2018 and after the final warning was issued, the Board went beyond the Referee's decision and held that Appellant failed to prove Claimant selected the wrong unit on May 21, 2018. As a result, the Board did not address and

---

[21] *Id.* at 11.
[22] Id. at 13-14.
[23] *Id.* at 14.
[24] *Id.*

7

rule on the only issue decided by the Referee: determining the date of the mistake made by Claimant.[25]

## Standard of Review

In reviewing an appeal from the UIAB, the Court's role is limited to evaluating the record in the light most favorable to the prevailing party.[26] "To prevail on appeal, the appellant must show the Board committed an error of law or demonstrate the findings of the Board are not supported by substantial evidence."[27] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[28] The Court must therefore evaluate the record to determine if it included substantial evidence that a reasonable mind could accept as adequate support for the UIAB's conclusions and to verify that such conclusions are free from legal error.[29] "If there is substantial evidence and no mistake of law, the Board's decision will be affirmed."[30]

---

[25] *Id.* at 15.

[26] *Smoke v. Coventry Health Care*, 2011 WL 2750711, at *2 (Del. Super. July 13, 2011).

[27] *Robbins v. Deaton*, 1994 WL 45344, at *2 (Del. Super. Ct. Feb. 7, 1994).

[28] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1221 (Del. 2015).

[29] *Majaya v. Sojourners' Place*, 2003 WL 21350542, at *4 (Del. Super. Ct. June 6, 2003).

[30] *Delgado v. Unemployment Ins. Appeal Bd.*, 295 A.2d 585, 586 (Del. Super. Ct. 1972).

## Discussion

To start, the Court finds that the UIAB's decision is free from legal error in granting Claimant unemployment insurance benefits. An individual is disqualified from receiving unemployment benefits if he or she has been fired for just cause.[31] "Just cause" for discharge includes "a willful or wanton act in violation of either the employer's interest, or of the employee's duties, or of the employee's expected standard of conduct."[32] It is the employer's burden to prove just cause by a preponderance of the evidence before the employee-claimant may properly be denied benefits.[33] In the present case, the Board affirmed the Referee's application of this standard and found Appellant failed to meet its burden of showing there was just cause to terminate Claimant for making a mistake on May 21.[34] Thus, Court cannot find that the Board committed legal error in reaching its conclusion.[35]

Furthermore, the Court finds that the Board's decision is supported by substantial evidence. Under 19 *Del. C.* § 3320(a), the UIAB "may on its own affirm, modify or set aside any decision of an appeal tribunal on the basis of the evidence

---

[31] *Wilson v. Unemployment Ins. Appeal Bd.*, 2011 WL 3243366, at *2 (Del. Super. July 27, 2011) (citations omitted); *see* 19 *Del. C.* § 3314(2).

[32] *Avon Products, Inc. v. Wilson*, 513 A.2d 1315, 1317 (Del. 1986).

[33] *Jones v. Health Care Ctr.*, 1994 WL 19927, at *3 (Del. Super. Ct. Jan. 5, 1994).

[34] R. at 111.

[35] *See Ferrante v. Delaware Park Casino*, 2015 WL 1201519, at *5 (Del. Super. Ct. Mar. 12, 2015) (finding no legal error where the UIAB affirmed the Referee's application of the "just cause" standard in a termination case).

9

previously submitted in such case or direct the taking of additional evidence or may permit any of the parties to such decision to initiate further appeal before it." This section provides the Board with "substantial latitude as to what evidence it may consider in reaching a decision" and grants it the authority to "base its decision on evidence previously submitted to the Appeals Referee or on new, additional evidence."[36] Here, the Board's questions, comments and ultimate decision indicate that it reviewed the Referee's decision and allowed the submission of additional evidence.[37] Any argument that the Board "went beyond the Referee's decision" in reaching its conclusion is unfounded.[38] Of equal importance is the Board's findings of fact which reveal that it considered the evidence collected from the documents Appellant submitted and the testimony of all witnesses before reaching its final ruling.

---

[36] *Robbins v. Deaton*, 1994 WL 45344, at *4 (Del. Super. Ct. Feb. 7, 1994).

[37] *See Kowalski v. Unemployment Ins. Appeal Bd.*, 1990 WL 28597, at *9 (Del. Super. Ct. Jan. 22, 1990) ("[T]he Board's obligation, when it assumes that evidence submitted to the Referee is part of the record is that it must review the record of the Referee before it decides the case or due process may be violated."); *see also Kowalski v. Unemployment Ins. Appeal Bd.*, 1990 WL 28597, at *9 (Del. Super. Ct. Jan. 22, 1990) ("During the hearing the Board specifically referred to testimony given at the Referee's hearing as being part of the record, thus indicating it reviewed the record before deciding the case.").

[38] *See Country Life Homes, Inc. v. Unemployment Ins. Appeal Bd.*, 2007 WL 1519520, at *2 (Del. Super. Ct. May 8, 2007) ("The Board's review of claims is *de novo* and it may make its own conclusions based on the material before it."); *Renshaw v. Widener Univ.*, 1987 WL 6471, at *1 (Del. Super. Ct. Jan. 2, 1987) ("Arguably, [Section 3320] grants the Board *carte blanche* in reviewing the factual findings of a referee.").

Although the Court might have reached an opposite conclusion, it must apply the well-established deferential standard of review afforded to decisions of an administrative agency.[39] In doing so, the Court finds a "reasonable mind" could determine the Board's decision is supported by substantial evidence and is free from legal error.[40]

## Conclusion

For the foregoing reasons, the Decision of the Unemployment Insurance Appeal Board is **AFFIRMED**.

**IT IS SO ORDERED.**

**Judge Calvin L. Scott, Jr.**

[39] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1230 (Del. 2015) ("It cannot be said that the Board's decision was unreasonable merely because this Court would have reached a different conclusion."); *Philip M. Finestrauss, P.A. v. Phillips*, 2002 WL 382858, at *2 (Del. Super. Ct. Mar. 8, 2002) ("[T]his Court will give deference to the expertise of administrative agencies and must affirm the decision of an agency even if the court might have, in the first instance, reached an opposite conclusion.").
[40] *See Johnson v. Chrysler Corp.*, 213 A.2d 64, 67 (Del. 1965) ("Only when there is no satisfactory proof in support of a factual finding of the Board may the Superior Court, or this Court for that matter, overturn it.").