# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES IGO, | ) | |
| | ) | |
| Claimant Below – | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N20A-03-001 ALR |
| | ) | |
| ACTS RETIREMENT LIFE | ) | |
| COMMUNITIES and | ) | |
| THE UNEMPLOYMENT | ) | |
| INSURANCE APPEALS BOARD, | ) | |
| | ) | |
| Employer Below – | ) | |
| Appellees. | ) | |

Submitted: November 17, 2020
Decided: January 5, 2021

*On Appeal from the Unemployment Insurance Appeals Board*
**REVERSED and REMANDED**

**MEMORANDUM OPINION**

Michele D. Allen, Esquire, Emily A. Biffen, Esquire, Allen & Associates, Wilmington, Delaware, Attorneys for Claimant Below – Appellant

Anthony N. Delcollo, Esquire, Offit Kurman, P.A., Wilmington, Delaware, Attorney for Employer Below – Appellee

**Rocanelli, J.**

This is an appeal from a decision of the Unemployment Insurance Appeals Board (the "Board") which denied unemployment benefits to Appellant James Igo ("Igo") after finding just cause for his termination.

## BACKGROUND

Igo was employed by Appellee ACTS Retirement-Life Communities ("Employer") as a full-time security guard for six years. Igo's responsibilities included monitoring Employer's property and noting in a daily logbook ("Daily Logbook") the areas secured by Igo during his shift.

On August 22, 2019, Igo wrote in the Daily Logbook that he had secured the doors in the areas he was required to check. The following shift discovered a set of balcony doors were not secured and noted that the Daily Logbook was inaccurate. During his next shift, Igo wrote the following note ("Igo's Logbook Note") in the Daily Logbook:

> 12-8 shift! If you find the balcony door open we would appreciate that you be considered [sic] enough to appreciate what the 4-12 shift has to do. If want [sic] to consider snitching on the previous shift, you will find yourself not very well enjoying [sic] to be with.[1]

Employer suspended Igo and investigated the incident. Employer concluded Igo falsified the Daily Logbook by stating he had secured doors which had not been

---

[1] *Igo v. ACTS Ret.-Life Communities*, Appeal No. 11134810 (Oct. 31, 2019) Emp.'s Ex. 2. Igo's Logbook Note is undated; however, neither party questioned whether Igo's Logbook Note was for August 23, 2019.

secured and for threatening his co-workers. On September 3, 2019, Igo was terminated for violating Employer's company policies against falsifying company records and threatening co-workers ("Misconduct Policy").

## PROCEDURAL HISTORY

Igo filed for unemployment benefits. The Claims Deputy concluded that Igo had been discharged by Employer for just cause and was therefore ineligible for unemployment benefits.[2] Igo appealed the findings of the Claims Deputy to the Appeals Referee.[3]

At the hearing before the Appeals Referee,[4] Employer was represented by counsel while Igo was a self-represented litigant. During Employer's presentation to the Appeals Referee, Employer claimed Igo's Logbook Note was threatening and that Igo's actions violated Employer's Misconduct Policy. Igo sought to introduce into evidence statements from longtime co-workers regarding Igo's character to rebut the Employer's claim that Igo's Logbook Note would be perceived as threatening by co-workers. However, the Appeals Referee declined to consider the character witness statements proffered by Igo on the grounds that the statements were impermissible hearsay. Nevertheless, the Appeals Referee reversed the Claim Deputy's decision and found that Igo was terminated without just cause because

---

[2] The Claims Deputy issued a decision on October 11, 2019.
[3] Igo's appeal was timely filed on October 16, 2019.
[4] The hearing by the Appeals Referee took place on October 31, 2019.

2

Employer failed to meet its burden of proving it had a consistently enforced company policy against falsifying records and threatening others. Accordingly, the Appeals Referee found Igo was qualified to receive unemployment benefits. Employer appealed the decision of the Appeals Referee to the Board.

At the Board hearing, Employer was permitted to introduce hearsay evidence regarding other employees' interpretations of Igo's Logbook Note. In addition, the Board allowed Employer to expand the record to present its employee handbook which includes Employer's Misconduct Policy. On the other hand, the Board refused to permit Igo, a self-represented litigant, to introduce hearsay evidence. Specifically, the Board declined to expand the record to consider written statements by Igo's longtime co-workers which Igo asserted would support his argument that a note from him would not be perceived as threatening by his co-workers.

The Board found that the statements made in Igo's Logbook Note were threatening. The Board also found Igo falsified company records because Igo noted in the Daily Logbook that he had secured certain doors during his shift which were noted as unsecured by the workers on the following shift. The Board concluded Igo was terminated from employment with just cause because Igo violated Employer's Misconduct Policy by falsifying records and threatening co-workers. The Board also concluded that Igo's misconduct was so egregious as to warrant immediate termination without any warning. Igo has appealed the Board decision to this Court.

## STANDARD OF REVIEW

In considering an appeal from a Board decision, this Court's role is limited to determining whether the Board's conclusions are supported by substantial evidence and are free from legal error.[5] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] The Court considers the record in the light most favorable to the party prevailing on the Board's appeal.[7] This Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[8] The Court may "reverse, affirm or modify the award of the Board or remand the cause to the Board for a rehearing."[9]

## DISCUSSION

A.  **The record evidence supports the Board's finding that Employer had a reasonable company policy against falsifying records and threatening co-workers and that Igo had been informed of Employer's Misconduct Policy.**

Delaware's unemployment statute provides for "the compulsory setting aside of an unemployment reserve to be used for the benefit of persons unemployed through no fault of their own."[10] An employee who is discharged for "just cause" is

---

[5] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1221 (Del. 2015).
[6] *Id.* (citing *Oceanport Indus., Inc. v. Willington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)).
[7] *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 782 (Del. 2011).
[8] *Id.*
[9] 19 *Del. C.* § 2350(b).
[10] 19 *Del. C.* § 3301.

disqualified from receiving unemployment benefits.[11]  There is "just cause" if an employee commits a "willful or wanton act or pattern of conduct in violation of the employer's interests, the employee's duties, or the employee's expected standard of conduct."[12]  Wanton is defined as "heedless, malicious or reckless," while willful implies actual specific or evil intent.[13]

The employer's expected standard of conduct is relevant in determining whether the actions of the employee were sufficient to constitute "just cause" for dismissal under Section 3314(2) of Title 19 of the Delaware Code.[14]  Violation of a reasonable company policy may constitute just cause for discharge if the employee is aware of the policy and the possible subsequent termination.[15]  In order to establish "just cause" for termination in violation of a company policy the employer must show that a policy existed prohibiting certain conduct and that the employee had been made aware of the policy.[16]

Employer did not introduce evidence of its Misconduct Policy in its presentation to the Appeals Referee.  Since Employer did not establish that a

---

[11] 19 *Del. C.* § 3314(2).

[12] *Avon Prods., Inc. v. Wilson*, 513 A.2d 1315, 1317 (Del. 1986).

[13] *Boughton v. Div. of Unemployment Ins. of Dep't of Lab.*, 300 A.2d 25, 26 (Del. Super. 1972).

[14] *Weaver v. Emp. Sec. Comm'n*, 274 A.2d 446, 447–48 (Del. Super. 1971).

[15] *Jackson v. Christiana Care*, 2008 WL 555918, at *2 (Del. Super. Feb. 29, 2008).

[16] *Id.*

5

company policy existed, the Appeals Referee found for Igo. Upon presentation of the matter to the Board, Employer expanded the record and presented its Misconduct Policy. Specifically, Employer presented its Misconduct Policy which prohibited the use of threatening language and falsification of company records.[17] The record evidence contains a copy of the Employer's handbook with Igo's signature.[18] Moreover, Igo acknowledged receipt of the Misconduct Policy.[19] Therefore, the record evidence supports the Board's finding that Employer had a reasonable company policy against misconduct and that Igo was aware of Employer's Misconduct Policy.

**B.** **The Board committed legal error by failing to correct the Appeals Referee's error of denying Igo, a self-represented litigant, the opportunity to present hearsay evidence.**

Generally, an administrative agency is "not necessarily bound by strict evidence rules" and has discretion on whether to consider hearsay.[20] It is well-settled in Delaware that hearsay evidence is permissible in administrative hearings, so long

---

[17] *Igo v. ACTS Ret.-Life Communities*, No. 11134810 (Del. U.I.A.B. Feb. 25, 2020) Emp.'s Ex. 1.
[18] *Id.*
[19] *Igo v. ACTS Ret.-Life Communities*, No. 11134810, at 7 (Del. U.I.A.B. Dec. 11, 2019) (TRANSCRIPT) [hereinafter "UIAB Transcript"]. "Unknown Male: . . . is that your signature, sir? Mr. Igo: Yes, it is." *Id.*
[20] *E. Shore Poultry, Inc. v. Lewis*, 2000 WL 703808, at *2 (Del. Super. May 4, 2000).

as that evidence is not the sole basis for its decision.[21] Administrative boards should hear all evidence which could conceivably throw light on the controversy.[22] Exclusion of relevant material and competent evidence is grounds for reversal if the refusal is prejudicial.[23]

Here, the Board concluded Igo was terminated for just cause on the grounds that Igo used threatening language and falsified company records in violation of the Misconduct Policy. At the hearing, Employer's witness stated that two *other* employees, not present at the hearing, found Igo's Logbook Note to be threatening.[24] The Employer's witness stated:

> [A]nd it was taken as threat – [I] have the young lady and a young man that worked on the other shift that took it as a threat. And they were very upset, afraid [sic] what was the ramification going to be if they do their job.[25]

---

[21] *Husbands v. Del. Dep't of Educ.*, 2020 WL 1814045, at *3 (Del. Apr. 7, 2020) (TABLE) (citing *Larkin v. Gettier & Assocs.*, 1997 WL 717792, at *3 (Del. Super. Nov. 14, 1997)); *see also Geegan v. Unemployment Comp. Comm'n*, 76 A.2d 116 (Del. Super. 1950).

[22] *Ellicott v. Stericyle Inc.*, 2015 WL 311094, at *5 (Del. Super. Jan. 23, 2015).

[23] *Ridings v. Unemployment Ins. Appeal Bd.*, 407 A.2d 238, 240 (Del. Super. 1979).

[24] The record in this case is confusing. The hearing was held via telephone due to the COVID-19 pandemic. As a result, some speakers on the transcript are labelled as "unknown female" and "unknown male" which creates difficulty in understanding who is testifying.

[25] UIAB Transcript, No. 11134810, at 19.

The Board relied on Employer's hearsay evidence in concluding Igo's Logbook Note was threatening.[26]

Because the persons who claimed to feel threatened did not testify as witnesses at the Board hearing, Igo could not cross-examine the witnesses to challenge their testimony or attack their credibility. The Board relied on Employer's hearsay evidence to conclude that Igo's Logbook Note was threatening. Although the Board may admit and consider hearsay evidence, the Board must not base its decision solely on hearsay.[27] The only record evidence to suggest that Igo's Logbook Note was threatening, and therefore a violation of Employer's Misconduct Policy, were the hearsay statements presented by Employer. Accordingly, consideration of the hearsay evidence presented by Employer was prejudicial to Igo.

Even though the Board allowed Employer to present hearsay evidence, the Board declined to consider the relevant hearsay evidence Igo sought to introduce at the hearing. The Delaware Supreme Court considered the exclusion of relevant evidence by the Board in *Murphy & Landon, Professional Association v. Pernic*.[28] In that case, the Supreme Court considered whether the Board could adequately remedy a legal error committed by the Appeals Referee by considering evidence of

---

[26] *Igo v. ACTS Ret. Life Communities*, No. 11134810, at 2 (Del. U.I.A.B. Feb. 25, 2020).
[27] *E. Shore Poultry,* 2000 WL 703808, at *2.
[28] 121 A.3d at 1215.

employee's cumulative misconduct at the Board hearing.[29]  The Court concluded the Appeals Referee improperly restricted the evidence regarding employee's cumulative misconduct, despite the employer's argument that cumulative incidents ultimately led to the employee's termination rather than a single act of misconduct.[30] In finding that the Board did not adequately remedy the error committed by the Appeals Referee, the Court emphasized that rather than correcting the evidentiary limitation imposed by the Appeals Referee, the Board deferred to the Appeals Referee's conclusion that the employee was fired for a single instance of misconduct without any explanation.[31]  Moreover, the Court held the Board cannot simply ignore substantial and relevant evidence without an explanation.[32]

As was true in *Pernic*, the Appeals Referee who considered Igo's request for benefits impermissibly excluded evidence by rejecting as hearsay evidence proffered by Igo.  Specifically, Igo sought to introduce written statements by co-workers to prove he did not intend the note to be threatening and that it was not perceived as threatening.  The Appeals Referee declined to consider this evidence.  Furthermore, although the Board allowed the record to be expanded on Employer's behalf beyond the presentation to the Appeals Referee, the new evidence considered by the Board

---

[29] *Id.* at 1222.
[30] *Id.* at 1223.
[31] *Id.*
[32] *Id.* at 1224.

*was limited* to new evidence presented to the Board by Employer. The Board did not allow Igo to present hearsay evidence rejected by the Appeals Referee, even though Igo referenced co-worker statements as supporting Igo's contentions that Igo's Logbook Note was not threatening.

The hearsay evidence Igo sought to present was probative of whether Igo's Logbook Note was threatening and therefore the failure to consider that evidence was prejudicial to Igo. The Board did not address whether the Appeals Referee improperly restricted the evidence presented with respect to Igo's character. The failure of the Board to allow Igo to present hearsay evidence was prejudicial to Igo and constituted legal error.

Employer argues that the failure of the Board to consider Igo's hearsay evidence should be attributed to Igo and not to the Board. However, Igo was a self-represented litigant at the hearing before the Appeals Referee as well as before the Board. Self-represented litigants may be held to a less stringent standard in presenting their cases under certain circumstances.[33] A self-represented litigant should be granted more leniency in articulating arguments in support of his or her claim, affording the litigant an opportunity to be fully and fairly heard.[34] Any failure

---

[33] *Hayward v. King*, 2015 WL 6941599, at *4 (Del. Nov. 9, 2015) (TABLE).
[34] *Jackson v. Unemployment Ins. Appeal Bd.*, 1986 WL 11546, at *2 (Del. Super. Sept. 24, 1986) (stating the Court may give a self-represented litigant leniency to allow the case to be "fully and fairly heard").

by Igo to formally present hearsay statements does not necessarily reflects Igo's choice not to present such evidence. Igo did reference the statements even if he did not formally request that the statements be admitted into evidence. The Board was required to address the error by the Appeals Referee.[35] Moreover, failure to allow statements by Igo's co-workers to be presented by Igo at the Board hearing, especially where Employer was permitted to present co-worker hearsay statements, was legal error which requires reversal of the Board's decision.

## C.    The Board committed legal error by failing to address whether Igo was entitled to a final warning.

An employee terminated for just cause is not entitled to unemployment benefits.[36] Under Delaware law, an employer's obligation to show "just cause" also includes the burden to show "notice to the employee in the form of a final warning that further poor behavior or performance may lead to termination"[37] An exception to the final warning rule arises when the willful or wanton misconduct is "sufficiently serious" such that no prior warning is required.[38] However, even for

---

[35] *See Pernic*, 121 A.3d at 1224.

[36] *Kids & Teens Pediatrics of Dover v. O'Brien*, 2020 WL 6386646, at *3 (Del. Oct. 30, 2020) (TABLE) (citing *Moeller v. Wilm. Sav. Fund Soc'y*, 723 A.2d 1177, 1179 (Del. 1999)).

[37] *MBNA Am. Bank, N.A. v. Capella*, 2003 WL 1880127, at *3 (Del. Super. Apr. 15, 2003).

[38] *Kids & Teens Pediatrics of Dover*, 2020 WL 6386646, at *4 (citing *Weaver v. Emp. Sec. Comm'n*, 274 A.2d 446, 447 (Del. Super. 1971)).

serious misconduct, a warning is required if an employer "consistently tolerates willful or wanton misconduct."[39]  In that circumstance, "the employer may not be justified in firing employees without first warning them that their conduct no longer is acceptable."[40]

The employer bears the burden of proving by a preponderance of the evidence that it terminated the employee for just cause.[41]  Here, that burden of proof for Employer includes establishing that Employer did not have to warn Igo that his misconduct would result in his termination.  Although the Board concluded that Igo's misconduct was so egregious as to warrant immediate termination without any warning, the legal standard requires a finding that similar conduct had not previously been tolerated.  Decisional law supports this conclusion.[42]

First, a warning is required for conduct that is not sufficiently serious to warrant immediate termination.  For example, *Kids & Teens Pediatrics of Dover v. O'Brien*[43] involved an employee who was discharged without warning.[44]  The Claims Deputy found employee had been terminated for just cause and was

---

[39] *Kids & Teens Pediatrics of Dover*, 2020 WL 6386646, at *3 (quoting *Moeller*, 723 A.2d at 1179).
[40] *Id.* (quoting *Moeller*, 723 A.2d at 1179).
[41] *Pernic*, 121 A.3d at 1222.
[42] *Id.*
[43] 2020 WL 6386646, at *1.
[44] *Id.*

12

ineligible for unemployment benefits.[45] The Appeals Referee determined that employee was discharged without a warning and was qualified to receive benefits.[46] The employer appealed to the Board which found the employer was required to provide the employee with a final warning because her conduct was not sufficiently serious to warrant immediate termination.[47] Therefore, because the employer did not provide an unequivocal warning putting the employee "on clear notice that a repetition or continuation of certain behavior may lead to dismissal," employee was discharged without just cause.[48] The employer appealed to the Superior Court which affirmed the Board's decision.[49] The employer appealed to the Delaware Supreme Court which held that Delaware law requires an employee to receive a final warning before termination when the employee's conduct is not sufficiently serious.[50] Otherwise, termination is without just cause.[51]

Second, even for conduct that is willful and wanton, fundamental fairness requires an unambiguous warning for conduct that previously had been tolerated.[52]

---

[45] *Id.*
[46] *Id.*
[47] *Id.* at *3.
[48] *Id.* at *1.
[49] *Id.* at *2.
[50] *Id.* at *4.
[51] *Id.* (affirming the Board's decision that employee was terminated without just cause because employee did not receive a final warning before termination).
[52] *Ortiz v. Unemployment Ins. Appeal Bd.*, 317 A.2d 100, 101 (Del. 1974). *See also Smoke v. Coventry Health Care*, 2011 WL 2750711, at *3 (Del. Super. July 13, 2011).

In *Ortiz v. Coventry Health Care*, the Delaware Supreme Court held that a warning was required before termination for serious misconduct when the employer had previously tolerated similar misconduct. Ortiz had been caring for his wife who was seriously ill and Ortiz's employer had generously tolerated Ortiz's tardiness and absenteeism. Eventually, Ortiz's employer terminated Ortiz because he continued to be late and absent. The Delaware Supreme Court held that whether Ortiz had been warned was a critical fact which must be supported by record evidence.[53] Therefore, a warning is required to terminate an employee for serious misconduct that previously had been tolerated.

The Board did not make findings regarding whether Igo was entitled to a warning before he was fired. The Board's failure to make findings on whether a warning was necessary under the circumstances constitutes legal error and is grounds for reversal of the Board decision.

**D. The record does not include substantial evidence to support the finding that Igo falsified company records.**

The Board concluded Igo was terminated for falsification of company records in violation of Employer's Misconduct Policy. The Employer claimed that Igo falsified the Daily Logbook by stating he had secured all doors when the following shift found a balcony door unsecured. However, substantial evidence does not exist

---

[53] *Ortiz*, 317 A.2d at 101.

14

in the record to support a finding that Igo falsified the Daily Logbook. For example, the Employer's witnesses' statements contradict one another regarding whether Igo failed to secure the door or whether it had been opened again after he secured it. Before the Appeals Referee, Employer's representatives stated:

> [W]e did an investigation and found that [Igo] had falsified the [Daily Logbook] and signed off that he had secured the door during his rounds. Once we were made aware of this, we did review statements and did review the [Daily Logbook] and found that he did falsify company records and then used threatening language which warrants immediate termination.[54]

However, Employer's other representative stated before the Board:

> [The other shift] did not report that Mr. Igo didn't check the door. They just reported that when they came onto their shift at midnight, they found a door unlocked. Simple as that. . . . It was not directed at Mr. Igo or anyone in particular. They were just stating a fact.[55]

In addition, Igo testified that persons other than he had access to the premises.[56]

Therefore, the Board's conclusion that Igo had falsified records is not supported by substantial evidence. Accordingly, the Board's finding that Igo falsified the Daily Logbook in violation of Employer's Misconduct Policy does not withstand appellate review and must be addressed by the Board on remand.

---

[54] *Igo v. ACTS Ret.-Life Communities*, Appeal No. 11134810, at 9 (Oct. 31, 2019) (TRANSCRIPT) [hereinafter "Appeals Referee Transcript"]. As stated above, this portion of the record is confusing with respect to who is speaking.
[55] UIAB Transcript, No. 11134810, at 19.
[56] Appeals Referee Transcript, No. 11134810, at 26.

## CONCLUSION

The Board's decision must be free from legal error. The Board committed legal error by failing to correct the error by the Appeals Referee which denied Igo, a self-represented litigant, the opportunity to present hearsay evidence, as well as by failing to allow Igo to introduce that hearsay evidence at the Board hearing. The Board committed legal error by failing to address whether Igo was entitled to a final warning – either because Igo's conduct was not sufficiently serious as to warrant termination without a final warning or because Employer had previously tolerated similar misconduct by Igo or other employees such that a warning was required even for willful and wanton misconduct. In addition, while the Board's findings are entitled to great deference by this Court, the Board's conclusions must be supported by substantial evidence and reflect a rational consideration of the record. Although the record evidence supports the Board's finding that Employer had a reasonable company policy against falsifying records and that Igo had been informed of Employer's Misconduct Policy, the record does not include substantial evidence to support the finding that Igo falsified company records.

16

NOW, THEREFORE, this 5th day of January, 2021 the decision of the Unemployment Insurance Appeals Board is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

*Andrea L. Rocanelli*

_____

The Honorable Andrea L. Rocanelli