# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SARAH LATSCH, GUARDIAN OF MACKENZIE LATSCH | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | C.A. No. S20A-12-001 CAK |
| MEDING & SON, INC. | ) ) | |
| and | ) ) | |
| UNEMPLOYMENT INSURANCE APPEAL BOARD, | ) ) ) | |
| Appellees. | ) ) | |

Submitted: July 28, 2021
Decided: August 2, 2021

*Appeal from Unemployment Insurance Appeal Board*

## <u>MEMORANDUM OPINION AND ORDER</u>

Sarah Latsch, *pro se*, 18927 Washington Street, Lincoln DE, 19960, Appellant

David N. Rutt, Esquire, Moore & Rutt, P.A., 122 W. Market Street, P.O. Box 554 Georgetown, DE 19947, Attorney for Appellee, Meding & Sons, Inc.

**KARSNITZ, J.**

## Background

Mackenzie Latsch ("Appellant") was employed as a part-time busser at Meding & Son Seafood by Meding & Son, Inc. ("Employer"). On March 15, 2020, Appellant worked what would be her last shift for Employer. On April 12, 2020, Appellant filed a claim for unemployment insurance benefits with the Delaware Department of Labor.

Between March 15, 2020 and June 8, 2020, Appellant did not work because of COVID-19. On June 8, 2020, Appellant came into her place of employment to work a shift. However, she ended up leaving and did not work. Immediately after Appellant arrived at her workplace, Employer and Appellant had a meeting. At the meeting, Employer gave Appellant a paper stating that: She had been offered hours at Meding & Son Seafood; she decided to apply for unemployment insurance benefits without discussing availability with Employer; and she did not contact Employer for employment.

What happened at the meeting has been disputed. During the hearing before the Unemployment Insurance Appeal Board (the "Board"), Employer testified that Appellant left the workplace voluntarily because, as a sixteen-year-old minor, she did not feel comfortable signing the document without having her mother review it. It stated that Appellant did not come back to the workplace on that day, and she

2

never contacted Employer after she left. On the other hand, Appellant testified that Employer required her to sign the document as a condition to remain employed, and it terminated her employment because she refused to sign it.

On July 29, 2020, a Claims Deputy in the Delaware Department of Labor, Division of Unemployment Insurance, denied Appellant's application for the unemployment insurance benefits based on the termination date of March 15, 2020 and determined that Appellant did not meet her burden to show "good cause" for her voluntarily leaving employment pursuant to 19 *Del. C.* 3314(1).[1]

Appellant appealed the Claims Deputy's decision to the Chief Appeals Referee (the "Referee"). On August 28, 2020, the Referee reversed the Claims Deputy's decision based on the termination date of March 15, 2020, concluding that Appellant was discharged from her work without "just cause" in connection with her work pursuant to 19 *Del. C.* 3314(2) and, thus, was qualified for unemployment insurance benefits.

---

[1] Even though the Claims Deputy used the words "just cause," instead of "good cause," he meant "good cause" as he found that Appellant voluntarily quitted her work, citing 19 *Del. C.* § 3314(1). The pertinent part of 19 Del. C. § 3314(1) reads: an individual shall be disqualified for benefits: "[f]or the week in which the individual left work *voluntarily without good cause* attributable to such work and for each week thereafter until the individual has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount." 19 *Del. C.* §3314(1) (emphasis added).

Subsequently, Employer appealed the Appeals Referee's decision to the Board. On November 25, 2020, the Board reversed the Referee's decision. The Board found that the termination date was June 8, 2020 and decided that Employer had terminated Appellant's employment for "just cause" pursuant to 19 *Del. C.* 3314(2), and, thus, Appellant was not entitled to unemployment insurance benefits. Appellant appeals the Board's decision to this Court.

## Standard of Review

I am aware that Appellant is proceeding *pro se*, and, thus, I will interpret her filings leniently.[2] However, my review on this matter is limited by law.[3] I am only allowed to review whether the Board's decision is "free from legal error" and "supported by substantial evidence."[4] If a reasonable person accepts evidence as adequate to support a conclusion, such evidence is substantial.[5] It is not the Superior Court's role "to weigh the evidence, determine questions of credibility or make its own factual findings."[6] The Superior Court should merely decide if the evidence is

---

[2] *See Feldman v. YIDL Tr.*, 2018 WL 1151797, at *2 (Del. Ch. Mar. 5, 2018) (citing *Smith v. Christina Sch. Dist.*, 1996 WL 757282, at *1 (Del. Ch. Jan. 2, 1997)).

[3] *Mondestin v. Perdue Foods, LLC*, 2019 WL 5561395, at *1 (Del. Super. Ct. Oct. 28, 2019).

[4] *Jogee v. Perdue Foods, LLC*, 2020 WL 2124753, at *2 (Del. Super. Ct. May 4, 2020) (citation omitted); *see* 19 *Del. C.* § 3323(a) ("In any judicial proceeding under this section, the findings of the Unemployment Insurance Appeal Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law.").

[5] *Majaya v. Sojourners' Place*, 2003 WL 21350542, at *4 (Del. Super. Ct. June 6, 2003).

[6] *Unemployment Ins. Appeal Bd. v. Div. of Unemployment Ins.*, 803 A.2d 931, 937 (Del. 2002).

legally adequate to support the [Board] 's factual findings."[7]  It is within the Board's exclusive purview "to judge witness credibility and resolve conflicts in testimony."[8]

## Analysis

The Referee found that the termination date was March 15, 2020, as it was the last day Appellant worked at Meding & Son Seafood.  The Board disagreed with the Referee on the separation date and found that the separation date was June 8, 2020, as it was the last day Appellant came in to work at Meding & Son Seafood.  The Board's finding of the separation date is adequately supported by the evidence submitted to the Board as both parties agreed that Appellant came in to work at Meding & Son Seafood on June 8, 2020.

The important fact in dispute before the Board was whether Employer required Appellant to sign the following statement to remain employed immediately after she arrived at Meding & Son Seafood on June 8, 2020.

> I _____ was offered hours at Meding & Son Seafood.  Prior to discussing availability or hours available I have decided to apply to unemployment [insurance benefits].
>
> I have not contacted Meding Seafood & Sons and or Robert Meding for employment nor communicated expectations for employment.

---

[7] *McManus v. Christina Serv. Co.*, 1997 WL 127953, at *1 (Del. Super. Ct. Jan. 31, 1997).
[8] *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 782 (Del. 2011) (citation omitted).

5

At the hearing before the Board, Employer testified that it never required Appellant to sign the statement to remain employed. Instead, Employer stated that Appellant voluntarily left work so that she (a sixteen-year-old minor) could have her mother review the paper. Employer testified that Appellant did not come back to work on the same day. Employer also said that it never heard back from Appellant. Employer testified that it has other employees who had not signed the identical statement and who remained employed. On the other hand, Appellant stated that the Employer required her to sign the statement to remain employed and that the Appellant was terminated because she refused to sign the statement.

The Board found Employer's evidence more credible because Appellant did not submit any evidence that could rebut Employer's testimony that there are other employees who had not signed the statement and remained employed. The Board found that: (1) on June 8, Employer gave Appellant a document containing the statement at issue, however, Appellant was not required to sign it as a condition to remain employed; (2) Appellant left the work voluntarily on the same day and never came back to work or contacted Employer again. Based on these findings, the Board decided that Employer had just cause to terminate Appellant's employment because she abandoned her job. The Board explained that it "consistently found job abandonment to be just cause for termination."

6

On appeal to this Court, Appellant contends that she is qualified for the unemployment benefits because she was discharged from her work without just cause. Appellant submits new evidence, including Abbegail Allen's statement, in order to support her contention. Employer argues that Appellant was discharged from her work for just cause because Appellant's abandonment of her job constitutes "willful or wanton act or pattern of conduct in violation of the employer's interest, the employee's duties, or the employee's expected standard of conduct."

I am not allowed to consider the new evidence Appellant submitted to the Court. I am only permitted to review the evidence submitted as part of the record made before the Board by the Appellant and the Employer. I find that a reasonable mind would accept the evidence as adequate to support the Board's factual conclusion.

Moreover, I do not find any legal errors in the Board's decision. 19 *Del. C.* § 3314(2) provides, in pertinent part, that an individual shall be disqualified for benefits:

> [f]or the week in which the individual was discharged from the individual's work for just cause in connection with the individual's work and for each week thereafter until the individual has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.

7

Courts have interpreted "just cause" as "a willful or wanton act or pattern of conduct in violation of the employer's interest, the employee's duties, or the employee's expected standard of conduct."[9] "Wanton" refers to a "heedless, malicious or reckless act, but does not require actual intent to cause harm."[10] In contrast, "willful" is defined as "actual, specific or evil intent." "Wilful and wanton conduct is that which is evidenced by either conscious action, or reckless indifference leading to a deviation from established and acceptable workplace performance; it is unnecessary that it be founded in bad motive or malice."[11]

Job abandonment constitutes "just cause" for discharging an employee from her work, as it is willful or wanton conduct disregarding the interests of the employer and duties of employment.[12] In *Von Fegyverneky v. CFT Ambulance Service*,[13] this Court found that the employee was discharged for just cause pursuant to 19 *Del. C.* § 3314(2) because she abandoned her work. There, the employee sent several text messages to her supervisor in order to contact the employer. However, the Court noted that the employee "should have made further effort to contact [the e]mployer through alternative means or by physically reporting to [the e] mployer's location to

---

[9] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1222 (Del. 2015) (citing *Avon Products, Inc. v. Wilson*, 513 A.2d 1315, 1317 (Del. 1986)).

[10] *Igo v. ACTS Ret. Life Communities*, 2021 WL 37461, at *2 (Del. Super. Ct. Jan. 5, 2021).

[11] *MRPC Fin. Mgmt. LLC v. Carter*, 2003 WL 21517977, at *4 (Del. Super. Ct. June 20, 2003).

[12] *Goubeaud v. Cty. Envtl. Co.*, 2013 WL 3001489, at *3 (Del. Super. Ct. June 7, 2013).

[13] 2012 WL 2700464, at *3 (Del. Super. Ct. June 28, 2012).

obtain scheduling information." Because the Court did not find any effort from the employee to obtain scheduling information beyond text messages, the Court concluded that the employee's mere claims without more evidence will not negate the employer's substantial evidence bolstering just cause for the employee's discharge.

The record shows a factual dispute, which involves the credibility of testimony. The Board found that Employer's version was more convincing. I am bound by the Board's decision as it is supported by sufficient evidence. The Board's decision was free from legal error when it concluded that Appellant was disqualified for unemployment insurance benefits pursuant to 19 *Del. C.* §3314(2) as she abandoned her job without any further efforts and, thus, was discharged for just cause. Accordingly, I hold that the decision of the Board, finding that Appellant was terminated for just cause and denying unemployment insurance benefits, is based on substantial evidence and free of legal error.

### Conclusion

For the foregoing reasons, the decision of the Unemployment Insurance Appeal Board is hereby **AFFIRMED. IT IS SO ORDERED.**

/s/ Craig A. Karsnitz
Craig A. Karsnitz

9

cc: Prothonotary