# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BARRETT BUSINESS SERVICE, )
INC., D/B/A ENTERPRISE )
MASONRY, )
           )
        Appellant, )
           )
        v. )    C.A. No.: N21A-03-004 CEB
           )
ROBERT EDGE, )
           )
        Appellee. )

## ORDER

Submitted: July 15, 2021
Decided: October 14, 2021

*Upon Consideration of Barrett Business Services, Inc.'s Appeal from a Decision of
the Industrial Accident Board,*
**AFFIRMED.**

Nicholas E. Bittner, Esquire, HECKLER & FRABIZZIO, Wilmington, Delaware.
*Attorney for Appellant Barrett Business Service, Inc., d/b/a Enterprise Masonry*.

Timothy E. Lengkeek, Esquire, YOUNG CONAWAY STARGATT & TAYLOR,
LLP, Wilmington, Delaware. *Attorney for Appellee Robert Edge*.

**BUTLER, R.J.**

Appellant Barrett Business Service, Inc., d/b/a Enterprise Masonry ("Employer"), seeks review of a decision of the Industrial Accident Board (the "Board") that awarded Robert Edge ("Claimant") compensation for a stroke the Board found was "caused" by work-related injuries Claimant had sustained earlier in the day. The Court assumes the parties' familiarity with this case's facts and procedural history and so only recounts the background relevant for affirming the Board's decision.[1]

1.     Claimant was working on a scaffold at one of Employer's jobsites. He fell off. At the hospital, things got worse. He suffered a stroke in the emergency room that left him fully disabled.

2.     Claimant sought compensation from Employer for the stroke. Employer opposed—a position that led to a causation debate. The stroke occurred several hours after Claimant's fall and the doctors gave Claimant a clot-disrupting medication that dramatically reduced his blood pressure. Claimant's poor cardiac health and questions about the seriousness of his injuries led the parties to focus on whether the stroke resulted from the workplace fall or something else.

---

[1] The Court directs interested readers to two decisions issued in connection with this matter that document more completely Claimant's injuries and the agency and appellate litigation they have generated. *See generally Barrett Bus. Serv., Inc. v. Edge*, 2020 WL 6335897 (Del. Super. Ct. Oct. 29, 2020) ("*Edge II*"); *Barrett Bus. Servs., Inc. v. Edge*, 2019 WL 2070460 (Del. Super. Ct. May 1, 2019) ("*Edge I*").

1

3.      Causation mattered.  If the fall were deemed the actual, "but-for" cause of the stroke, then the stroke and its costs would be compensable as work-related injuries.[2]  If not, Claimant would not receive Worker's Compensation benefits.

4.      As so often happens in these matters, the dispute became a battle of the experts.  Although the experts seemed to agree the stroke originated from a clogged or "occluded" carotid artery, they disagreed about why the artery clogged in the first place.  Specifically, the experts dueled over whether the fall caused the stroke by contributing to a carotid occlusion or whether the occlusion caused the stroke independently from the fall due to Claimant's poor health and his medically-induced drop in blood pressure.

5.      Claimant's experts proposed a direct causal theory.  They opined that the fall aggravated Claimant's pre-existing arteriosclerosis, separating plaque particles from vessel walls, putting them in motion in Claimant's body, and eventually combining them to block the blood flow in his carotid artery.  They also testified that cases like this one—in which the symptoms of blockage arise within hours after a trauma—tend to show that, regardless of a trauma's seriousness, a patient may be asymptomatic until the occlusive mass the trauma aggravated produces the stroke.

---

[2] *See* 19 *Del. C.* § 2301(5), (16) (2020) (defining "compensation," "injury," and "personal injury").

6.     Employer's experts advanced a superseding cause theory based on Claimant's previously known risk factors.  They opined that Claimant had physiological comorbidities, including untreated hypertension, together with a negative cardiac history, which included tobacco consumption, that independently caused the stroke.  They also challenged the premise of Claimant's experts' trauma studies, testifying that Claimant's facial injury was too minimal to dislodge pre-existing plaque.

7.     The Board found the fall caused the stroke and so awarded Claimant compensation.  In reaching its verdict, the Board framed its analysis in witness credibility.  It found Claimant's experts opinions to be more consistent with the facts and filled more evidentiary gaps.  Conversely, the Board found Employer's experts failed to establish that the delay between the fall and the stroke or administration of medication at the hospital was significant.  Moreover, the Board observed that Employer's force conclusions were contradicted by other evidence (*e.g.*, data on the relationship between minor head damage and cardiac occlusions).  The Board also reasoned that, under Delaware law, the presence of multiple health issues is not controlling where, as here, the work accident sets the injury in motion.[3]

---

[3] D.I. 7, Ex. L at 11–12 (citing *Reese v. Home Budget Ctr.*, 619 A.2d 907, 912 (Del. 1992)) (hereinafter "Bd. Op.").

8.      This is Employer's third trip to the appellate well.[4]   In its first appeal, Employer successfully argued that the Board did not articulate its causation finding clearly enough.[5]   In its second appeal, Employer convinced the Court that the Board on remand should have permitted Employer to introduce new expert testimony on causation, but did not.[6]   Now, armed with additional experts and a clarified causation ruling, Employer argues the Board's decision is not supported by substantial evidence.

9.      This Court has jurisdiction to hear appeals from the Board's decisions.[7] "[T]he sole function of the Superior Court . . . on appeal[] is to determine whether or not there was substantial competent evidence to support the finding[s] of the Board, and if [there is], to affirm the findings of the Board."[8]   The Court's review is confined to determining whether "the evidence is legally adequate to support the agency's factual findings."[9]   As a result, appellate review of an administrative decision is not an opportunity for an unsuccessful party to relitigate factual issues

---

[4] *See supra* note 1.
[5] *Edge I*, 2019 WL 2070460, at *3–4.
[6] *Edge II*, 2020 WL 6335897, at *13–15.
[7] 19 *Del. C.* § 2350(a).
[8] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[9] *Boggerty v. Stewart*, 14 A.3d 542, 550 (Del. 2011) (internal quotation marks omitted).

presented to, and decided by, the agency.[10]  The Court will not entertain granular critiques of the evidentiary weight the Board afforded the facts adduced below or reevaluate the credibility the Board assigned the witnesses who appeared before it.[11]

10.     Absent legal error, the Court will defer to the Board's factual findings where supported by substantial evidence.[12]  The substantial evidence standard sets a low bar.[13]  An agency decision is supported by substantial evidence if it is based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]  "Only when there is no satisfactory proof to support a factual finding of the Board may the [Court] . . . overturn that finding."[15]  If substantial evidence for the Board's decision exists, it "must be affirmed."[16]  Accordingly, unless the Board's

---

[10] *See, e.g.*, *Falconi v. Coombs & Coombs, Inc.*, 902 A.2d 1094, 1098 (Del. 2006) ("The appellate court does not weigh the evidence, determine questions of credibility, or make its own factual findings.").

[11] *See, e.g.*, *Noel–Liszkiewicz v. La–Z–Boy*, 68 A.3d 188, 191 (Del. 2013) ("Weighing the evidence, determining the credibility of witnesses, and resolving any conflicts in the testimony are functions reserved exclusively for the Board.").

[12] *E.g.*, *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016); *see also Del. Bd. of Med. Licensure & Discipline v. Grossinger*, 224 A.3d 939, 951, 955 & n.119 (Del. 2020) (observing that an agency's legal interpretation is reviewed *de novo* but its application of that interpretation to the facts is reviewed for substantial evidence).

[13] *See, e.g.*, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold . . . is not high.").

[14] *Person–Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009) (internal quotation marks omitted).

[15] *Powell v. OTAC, Inc.*, 223 A.3d 864, 871 (Del. 2019) (alteration and internal quotation marks omitted).

[16] *Breeding v. Contractors–One–Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

5

reasoning is irrational or legally erroneous, or the Board mischaracterizes or ignores the record, the Court will defer to the Board's decision.[17]

11.     Substantial evidence supports the Board's decision.  The Board evaluated all the expert testimony and simply found Claimant's experts had more credible opinions.   In doing so, the Board considered the whole record, including expert depositions from prior proceedings, identified weaknesses in Employer's experts' testimonies both on their own terms and in reference to other testimonial and scientific evidence, and articulated specific reasons why those testimonies were deficient.  For example, the Board found Employer's experts unable to demonstrate any importance of the delay between the fall and the stroke.[18]  The Board also accepted, *arguendo*, Employer's experts' opinion that Claimant incurred insignificant head injuries, but also found Employer's experts overlooked statistical evidence suggesting that at least 50% of post-trauma strokes occur in patients who were injured as lightly as the experts hypothesized.[19]  Given these discrepancies, the Board decided Employer's experts lacked knowledge sufficient to support an evidentiary finding that Claimant's fall did not cause the stroke.[20]  The Board's use

---

[17] *See Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1221–24 (Del. 2015).
[18] Bd. Op. at 12.
[19] *Id.*
[20] *Id.* at 12–13.

of competent evidence to measure credibility implies a logical and organized fact-finding process that is entitled to deference on appeal.[21]

12. Contrary to Employer's contentions, the law permits the Board, through its experience, to resolve conflicting medical testimony by rejecting, "in whole or in part, the testimony of one physician" on credibility grounds.[22] And it may do so without expressly parsing and refuting every bit of testimony the rejected expert provided.[23] Here, the Board rejected Employer's experts and, even though not required, it provided clear reasons for doing so. Employer's dissatisfaction with that otherwise rational outcome does not diminish the "satisfactory proof" supporting it.[24] Indeed, the Court will not intrude into the Board's exclusive province of witness credibility whenever an unsuccessful litigant thinks its experts were more effective than the Board found them to be.[25] Instead, where the Board appropriately adopts

---

[21] *Boggerty*, 14 A.3d at 550; *accord Pernic*, 121 A.3d at 1222 & n.28.

[22] *Turbitt v. Blue Hen Lines, Inc.*, 711 A.2d 1214, 1215 (Del. 1998); *Noel–Liszkiewicz v. La–Z–Boy, Inc.*, 2012 WL 4762114, at *4 (Del. Super. Ct. Oct. 3, 2012) ("In a battle of experts, the Board is ordinarily free to favor one expert's testimony."), *aff'd*, 68 A.3d 138; *see also* 29 *Del. C.* § 10142(d) (2020) ("The Court . . . shall take due account of the experience and specialized competence of the agency . . . .").

[23] *See, e.g.*, *Steppi v. Conti Elec., Inc.*, 2010 WL 718012, at *3 (Del. Mar. 16, 2010) ("It is well-settled law that the Board may accept the testimony of one expert while summarily disregarding the opinion testimony of another expert.").

[24] *Evans v. Tansley*, 1988 WL 32033, at *3 (Del. Mar. 29, 1988).

[25] *Thompson v. Christiana Health Care Sys.*, 25 A.3d 778, 782 (Del. 2011); *Unemp. Ins. Appeal Bd. v. Div. of Unemp. Ins.*, 803 A.2d 931, 937 (Del. 2002).

one expert opinion over another, as it did here, the opinion the Board adopts qualifies as substantial evidence.[26]

13.    Nor may Employer retry through the backdoor of an administrative appeal the case it lost below.  The Board was free to select who it thought to be the most credible of the competing experts.[27]  And it did not abuse that discretion.  The Board properly acknowledged the disparities dividing each side's views, but still "was entitled to accept" Claimant's experts over the others.[28]  After all, testimony is imperfect; the law does not require the Board to reconcile every inconsistency before choosing who to believe.[29]

14.    To be sure, the Board's choice was not the only possible one.  The Board could have preferred Employer's experts or put less weight on Claimant's experts.  But the Board's method for choosing Claimant's experts neither "exceed[s] the

---

[26] *Person–Gaines*, 981 A.2d at 1161.

[27] *See, e.g.*, *Playtex Prods., Inc. v. Leonard*, 2002 WL 31814637, at *3 (Del. Super. Ct. Nov. 14, 2002) ("The Court does not stand as the trier of fact and will not weigh witness credibility [or] substitute its own opinion for that of the Board's [where] there is sufficient evidence to support the Board's decision . . . ." (citations omitted)), *aff'd*, 2003 WL 21107145 (Del. May 12, 2003).

[28] *Standard Distrib. Co. v. Nally*, 630 A.2d 640, 646 (Del. 1993).

[29] *See Steppi*, 2010 WL 718012, at *3.

bounds of reason" nor rests on a factual or legal error.[30]  So, even if the Court might have chosen differently, it cannot override the Board's judgment with its own.[31]

15.    In its two previous appeals, Employer needed to show the Board committed an error of fact or law or otherwise failed to craft a decision capable of promoting meaningful appellate review.  It did.  This time, Employer needed to show the Board's decision finding Employer's experts less persuasive than Claimant's experts was not supported by substantial evidence.[32]  It did not.  Accordingly, the Board's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge

---

[30] *Sweeney v. Del. Dep't of Transp.*, 55 A.3d 337, 342 (Del. 2012); *Gargano v. Food Lion, Inc.*, 2012 WL 5356294, at *2 (Del. Oct. 31, 2012).

[31] *E.g.*, *Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981); *Kreshtool v. Delmarva Power & Light Co.*, 310 A.2d 649, 653 (Del. 1973).

[32] *See, e.g.*, *Mancus v. Merit Emp. Rels. Bd.*, 2019 WL 480040, at *4 (Del. Super. Ct. Feb. 1, 2019) ("The burden of persuasion is on the party seeking to overturn a decision of the Board to show that the decision was arbitrary and unreasonable." (internal quotation marks omitted)).