# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DAVID I. BULL,              :
                                   :       C.A. No.: K23A-12-002 JJC
              Appellant,     :
                                   :
          v.                 :
                                   :
UNEMPLOYMENT INSURANCE  :
APPEAL BOARD and         :
FIRST STATE COMMUNITY    :
ACTION AGENCY,          :
                                   :
             Appellees.      :

Submitted: March 26, 2024
Decided:   June 24, 2024

## **ORDER**

On this 24th day of June 2024, having considered Appellant David Bull's appeal of the decision of the Unemployment Insurance Appeal Board (the "Board" or "UIAB"), and the response of Appellee First State Community Action Agency ("First State"), it appears that:

1.     Mr. Bull worked for First State as its human resources director until First State terminated his employment on April 28, 2023.[1] Bernice Edwards, Executive Director of First State and Mr. Bull's direct supervisor, wrote Mr. Bull's termination letter. In it, she explained that First State terminated him for policy violations for inappropriate interactions with other First State employees and a "pattern of unprofessional conduct, insubordination, and poor job performance."[2]

---

[1] Termination Letter, R. at 87 [hereinafter the Court refers to the UIAB's certified record as "R. at …"].
[2] *Id.*

The letter further explained that First State made the decision to terminate him after a consultant finished investigating Mr. Bull's conduct, which included the review of a complaint lodged against Mr. Bull by another employee.[3]

2. Following his termination, Mr. Bull applied for unemployment insurance benefits. Initially, a claims deputy found him eligible.[4] First State then appealed the decision, and a referee held a hearing.[5] After the hearing, the referee reversed the claims deputy's determination and found just cause to terminate his employment.[6]

3. Mr. Bull then appealed the referee's decision to the UIAB. During that hearing, Mr. Bull contended that (1) the appeals referee erred when relying on inadmissible hearsay, and (2) Ms. Edwards misrepresented events during the hearing.[7] The Board affirmed the referee's decision.[8] The Board agreed, however, that Mr. Bull's alleged failure to comply with a performance improvement plan did not contribute to just cause because the evidence supporting the allegation was based purely upon hearsay. Nevertheless, the UIAB found that his "other performance deficits" were supported by correspondence between Mr. Bull and Ms. Edwards.[9] Based upon those deficits, the UIAB found Mr. Bull ineligible for unemployment benefits because his "refusal to comply with his job responsibilities and direct orders from the Executive Director amounted to willful and wanton conduct in violation of the employer's interest."[10]

---

[3] *Id.*
[4] R. at 216.
[5] R. at 80.
[6] R. at 83.
[7] *See* Tr. of Bd. Hr'g, R at 31:2–40:22 (arguing, *inter alia*, that the policy violations referenced in his termination letter were unsubstantiated by admissible non-hearsay evidence, that his performance improvement plan was based entirely upon a false narrative, and that he did not violate any policies).
[8] Decision of the Unemployment Ins. Appeal Bd., R. at 6.
[9] *Id.*, R. at 8.
[10] Decision of the Unemployment Ins. Appeal Bd., R. at 8.

4.     The Board based its finding of just cause, in large part, on a series of emails exchanged between Mr. Bull and Ms. Edwards, which corroborated Ms. Edwards' testimony.  When viewing the evidence most favorably to First State, the emails referenced multiple late, or otherwise inadequate, reports.[11]     In the first exchange, Ms. Edwards emailed Mr. Bull on November 18, 2022.  There, she memorialized Mr. Bull's failure to produce monthly reports in September, October, and November of 2022, which were due on the 5th of each month.[12]   In response, Mr. Bull emailed that he would produce the September and October reports on November 21st.[13]  He failed to address the delinquent November report, however.[14]  On December 1, 2022, Ms. Edwards sent another email to Mr. Bull to reprimand him for not having produced the November report.[15]   In that email, Ms. Edwards provided him "[his] written warning and [his] final warning" for failing to submit his reports on time.[16]   Mr. Bull failed to respond to her email for six days.   Then, he replied that the report would be completed by December 9th, while disputing that it was late.[17]   Then, after the warning, on January 9, 2023, Ms. Edwards emailed Mr. Bull because the information he had provided in another matter for First State's Board of Directors was inadequate.[18]  She contended that he incorrectly formatted material in a report and that it looked like it "was thrown together at the last

_____

[11] *Id.*
[12] R at 102.
[13] *Id.*
[14] *Id*.
[15] R. at 104.
[16] *Id*.
[17] *Id.* While Mr. Bull appears to dispute the allegation that this report was late, this Court does not make factual findings or weigh evidence on appeal. *Johnson v. Chrysler Corp*., 213 A.2d 64, 66 (Del. 1965) ("On appeal from the Board … the Superior Court does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions.").
[18] R. at 106.

3

minute."[19]  In response, Mr. Bull denied that he sloppily prepared the report.  He contended that he formatted it consistently with a consultant's instructions.[20]

5.    Mr. Bull now appeals the UIAB's decision. [21] He contends that the record does not support the Board's findings[22]   More specifically, Mr. Bull assets that the Board erred because (1) it based its decision upon hearsay, and not upon otherwise admissible evidence; (2) First State did not adequately warn him in December that his job was in jeopardy for failing to submit adequate reports; and (3) the Board's factual findings regarding the extent of his late submissions were erroneous.[23]

6.    First State contends that substantial evidence supported the UIAB's decision.[24]  It asserts that the evidence below demonstrated that Mr. Bull (1) treated requests from his supervisor to submit his reports on time "very casually," and (2) submitted incomplete work "thrown together at the last minute" after receiving a written, final warning regarding his poor performance.[25]   First State also relies upon a separate investigation by a legal consultant which it asserts found other policy violations by Mr. Bull.[26]  On balance, First State asserts that the evidence from the referee and UIAB hearings, combined, supported the conclusion that he exhibited "willful and wanton conduct in violation of the employer's interest."[27]

7.    In a UIAB appeal, the Court must review the record to determine if substantial evidence supported the Board's decision and whether the Board

---

[19] *Id.*
[20] *Id.*
[21] R. at 3.
[22] Appellant's Opening Brief (D.I. 9).
[23] *Id.*
[24] Appellee's Answering Brief (D.I. 10) at 5.
[25] *Id.* at 5.
[26] *Id.* at 5–6.
[27] *Id.* at 6.

committed legal error.[28] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[29] The Court must consider the record in the light most favorable to the prevailing party below when performing this review.[30] In an appeal, the Court does not make factual findings of its own, assess witness credibility, or weigh the evidence other than to consider whether it meets the deferential threshold of "substantial."[31] Finally, the Court's review of the Board's discretionary rulings is limited to a review for arbitrariness and capriciousness.[32] Questions of law, on the other hand, are reviewed *de novo*.[33]

8. An employee who is terminated for just cause may not recover unemployment benefits.[34] Just cause constitutes a "willful or wanton act in violation of either the employer's interest, the employee's duties, or the employee's expected standard of conduct."[35] Furthermore, "[w]illful or wanton conduct is 'that which is evidenced by either conscious action, or reckless indifference leading to a deviation from established and acceptable workplace performance.'"[36] The burden before the UIAB rests with the employer.[37]

---

[28] *Unemployment Ins. Appeal Bd. Of Dept. of Labor v. Duncan*, 337 A.2d 308, 309 (Del. 1975); *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 781–82 (Del. 2011).

[29] *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994); *Battista v. Chrysler Corp.*, 517 A.2d 295, 297 (Del. Super. July 21, 1986).

[30] *Pochvatilla v. U.S. Postal Serv.*, 1997 WL 524062, at *2 (Del. Super. June 9, 1997).

[31] *Sokoloff v. Bd. of Med. Prac.*, 2010 WL 5550692, at *5 (Del. Super. Aug. 25, 2010).

[32] *Funk v. Unemployment Ins. Appeal Bd.*, 591 A.2d 222, 225 (Del. 1991).

[33] *Id.*

[34] 19 *Del. C.* § 3314. The statute provides that, "[a]n individual shall be disqualified for benefits … [f]or the week in which the individual was discharged from the individual's work for just cause in connection with the individual's work and for each week thereafter…." *Id.*

[35] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1222 (Del. 2015).

[36] *Wilson v. Unemployment Ins. Appeal Bd.*, 2011 WL 3243366, at *2 (Del. Super. July 27, 2011) (quoting *MRPC Fin. Mgmt., LLC v. Carter*, 2003 WL 21517977, at *4 (Del. Super. June 20, 2003)).

[37] *Pernic*, 121 A.3d at 1222.

9. Mr. Bull asserts multiple errors in the UIAB's decision. When addressing his contentions in series, first, he contests the sufficiency of the evidence because the employer presented allegedly inadmissible hearsay to both the referee and the Board. More specifically, he argues that the UIAB erred by considering the alleged violations of his improvement plan when the *only* evidence to support those findings was based upon hearsay.[38] In response, First State concedes that if it had terminated Mr. Bull only because of violations of his performance improvement plan, there would have been no just cause.[39] First State, argues, however, that it terminated him for his combined instances of misconduct.[40] First State emphasizes his allegedly late submissions and poor job performance that followed his warning.[41]

10. At the outset, Mr. Bull mistakenly asserts that the Board was required to disregard hearsay. Section 1201–4.0 of the Delaware Administrative Code provides that the Board must apply the Delaware Rules of Evidence in only a general sense.[42] That provision further provides that "[t]he Board *may admit and consider hearsay evidence*, [but] shall not base its decision *solely* on hearsay or other evidence not admissible under the Rules of Evidence."[43] Section 1201–4.0 also recognizes the UIAB's discretion by providing that "[t]he Board may consider all relevant evidence relating to any issue raised below… The admissibility of evidence and

---

[38] D.I. 9. Mr. Bull mistakenly argues that the performance improvement plan should not have been considered in the Board's decision to disqualify him for unemployment benefits. It was not considered – the Board clarified in its decision that it excluded the plan from its analysis. *See* R. at 21 n.11.

[39] Tr. of Bd. Hr'g, R. at 41:23–42:7.

[40] *Id.*, R at 42:2-7.

[41] Tr. of Bd. Hr'g, R at 42:2–43:21.

[42] 19 *Del. Admin. C.* § 1201–4.0

[43] *Id.* at 4.7 (emphasis added); *see also Husbands v. Del. Dept. of Ed.*, 227 A.3d, 2020 WL 1814045, at *2 (Del. 2020) (TABLE) ("[I]t is well settled in Delaware that hearsay evidence is permissible in administrative hearings, so long as that evidence is not the sole basis for the hearing officer's decision.").

determinations of the weight to be given evidence and the credibility of witnesses shall be within the sound discretion of the Board."[44]

11.    Accordingly, the Board, consistent with its regulations and  general tenets of administrative law, had the discretion to admit and consider hearsay evidence together with "all relevant evidence relating to any issue raised below."[45] As a result, it was not *required* to exclude Mr. Bull's alleged violations of his performance improvement plan from its decision.   The Board declined to consider the evidence, however, despite having the discretion to do so.[46]    That choice fell firmly within its discretion as the finder of fact.

12.    Mr. Bull's argument regarding hearsay, however, does not address Ms. Edwards' direct testimony and the email exchange between he and Ms. Edwards regarding his late and non-compliant reports that corroborated her testimony.  The Board placed significant weight on the email chains which were comprised of non-hearsay.   Namely, Mr. Bull's statements in the emails were admissions by a party opponent making them non-hearsay under the Delaware Rules of Evidence.[47] Furthermore, Ms. Edwards' statements in the emails were non-hearsay based upon their effect on the listener,[48] and because they demonstrated that Mr. Bull received notice that he may be terminated.  Accordingly, the emails would have been admissible under even the strict rules of evidence (which again, do not apply in this administrative setting).  They were admissions, in part, and admissible for purposes other than for the truth of the matter asserted, in other part   The record contains credible evidence to support the Board's finding of just cause.

---

[44] 19 Del. Admin. C. § 1201–4.0 (4.7.2–3).
[45] *Id.*
[46] Decision of the Unemployment Ins. Appeal Bd., R. at 8 n.11.
[47] D.R.E 801(d)(2)(A).
[48] *Estate of Rochester v. Reyes*, 2015 WL 7823132, at *3 (Del. Super. Dec. 3, 2015).

13. Second, Mr. Bull contends that he did not receive notice that his conduct violated a policy or that his employment was in jeopardy.[49] As a general rule, "[e]mployees are entitled to some notice that their performance is unacceptable before being discharged."[50] Accordingly, a single instance of misconduct is generally not just cause to terminate employment.[51] The warning need not explicitly state that termination may result from one's repeated misconduct, however.[52] Rather, the warning must merely provide the employee notice of the impropriety of her conduct and that disciplinary action should be expected if it continues.[53] In this case, the UIAB did not err when finding that Ms. Edwards emailed "final" warning provided Mr. Bull sufficient notice of the consequences of future misconduct. In fact, that email alone constituted substantial evidence to support notice the Board's finding.

14. Third, Mr. Bull mistakenly contends that First State's warning was insufficient because it did not address the specific behavior for which he was terminated. To that point, "an employer's warning is not necessarily limited to putting the employee on notice of the impropriety of the specific conduct that led to the warning[.]"[54] Here, First State notified Mr. Bull that he had filed reports

---

[49] *See* D.I. 9 ("The UIAB has inappropriately described … [the email] as sufficient warning (evidence) that this was a warning of insubordination that could result in my termination.").

[50] *MBNA America Bank, N.A. v. Capella*, 2003 WL 1880127, at *3 (Del. Super. April 15, 2003).

[51] *See Weaver v. Employment Sec. Commission*, 274 A.2d 446, 447 (Del. Super. Jan. 21, 1971) ("[A] single instance of an irresponsible failure to heed an employer's instructions does not rise to the level of a 'willful or wanton act in violation of . . . the employer's expected standard of conduct' . . . where it appears that the employer tolerated previous actions of similar severity without warning.")

[52] *Capella*, 2003 WL 1880127, at *3.

[53] *Id.*

[54] *Optima Cleaning Systems, Inc. v. Unemployment Ins. Appeal Bd.*, 2010 WL 5307981, at *4 (Del. Super. Dec. 7, 2010) ("If an employee is cited for failing to wear a tie, he may be unsuccessful in arguing that he did not receive a warning for subsequently failing to shine his shoes. Arguably the two violations are different. However, both violations involved the employee's attire, and the employee had notice that improper attire was unacceptable. Whether an employee was on notice that certain conduct is unacceptable is a question of fact.")

8

improperly over a three month period and explained that, "[t]hese reports are essential to the Board meetings … please remit them in a timely manner … Thank you for your attention to this very important manner."[55]  Accordingly, the administrative record  supports the UIAB's finding that Mr. Bull had notice that filing proper reports was an essential responsibility of his position and that First State considered it "very important."[56]  To be sure, Ms. Edwards' emailed warning did not explicitly address report formatting.  But, the warning provided Mr. Bull unambiguous notice that First State expected him to file adequate reports for its Board of Directors.[57]  On this record, substantial evidence supported the Board's finding of just cause because (1) he repeatedly submitted assignments late which demonstrated a conscious disregard of his employers' expectations; (2) he received a final warning requiring him to file proper reports for First State's Board;  and (3) he subsequently failed to do so in January 2023 because he filed a report that lacked necessary information and appeared to be "thrown together at the last minute."

15.    Mr. Bull also asserts that First State did not warn him that the alleged conduct investigated by a legal consultant in early 2023 could contribute to the just cause needed to deny his benefits.  This fails to acknowledge, however, that First State provided him a written warning in July 2022 for inappropriate discussions about an employee's employment status.[58]  At the time, First State warned him that "any further infractions may result in disciplinary actions."[59]  Accordingly, the July

---

[55] R. at 102.

[56] *Id.*

[57] *See Pernic*, 121 A.3d at 1225 ("An employer need not specify the types of conduct that could lead to termination so long as the employee is aware that certain types of conduct are improper and prohibited.")

[58] R. at 101.

[59] *Id*. On July 15, 2022, Ms. Edwards gave Mr. Bull a warning for an allegation of inappropriate discussions concerning other employees and told him that, "this behavior from our Human Resource department is unacceptable and will not be tolerated… [T]his is a verbal warning to you… Be advised that any further infractions may result in disciplinary actions."

2022 warning augments the record regarding his notice of the consequences of future misconduct, including possible termination.[60]

16.     Fourth, Mr. Bull seems to suggest that the four months that passed between Ms. Edwards' warning regarding improper report submissions (on December 1, 2022) and his termination (in April 2023) precluded a finding of just cause.[61]    Granted, an employer's inaction may constitute acquiescence to an employee's misconduct if the employer fails to address the misconduct and then later arbitrarily terminates the employee.[62]   The Delaware Supreme Court has rejected the suggestion, however, that an employer cannot rely on prior misconduct in a later termination decision.[63]   Such a blanket rule would be unfair to employers in many circumstances.   Likewise, such a rule would often cut to the detriment of many employees by creating a "perverse incentive" for employers to prematurely terminate employees without fully considering available options.[64]   Namely, to bar an employer from relying on prior instances of misconduct could incentivize an employer to terminate an employee without providing the employer the opportunity to redeem herself.[65]

---

[60] *See Pernic*, 121 A.3d at 1225 (holding that a warning is sufficient if it provides notice that a "general category of misconduct [is] unacceptable").

[61] *See* D.I. 13 (where Mr. Bull writes "[i]t is astonishing that my employment was terminated predicated on reflections during 2022. During the four (4) months of 2023 there were no negative reflections to meet the DOL's standard of preponderance of evidence. The lack of 2023 negative work reflections are the red herring that certainly has to be acknowledged.").

[62] *Avon Products, Inc. v. Wilson*, 513 A.2d 1315, 1317 (Del. 1986) ("When an employer has consistently tolerated certain misconduct on the part of an employee, or when the employer has already punished the employee by a mere verbal reprimand, such misconduct usually would not be a major factor in establishing just cause for the employee's discharge.").

[63] *See Pernic*, 121 A.3d at 1225; *but see Ortiz v. Unemployment Ins. Appeal Bd.*, 317 A.2d 100, 100–101 (Del. 1974) (holding that, where the employer attempted to accommodate an employee with severe attendance issues and those attendance issues persisted for a year following the employer's initial effort to address the issue without any discipline, the employer had acquiesced to the employees' poor attendance and could not rely on that misconduct to establish just cause).

[64] *Pernic*, 121 A.3d at 1226.

[65] *Id.*

17. Here, the record does not support that Mr. Bull fairly raised the issue of acquiescence below. As a result, the Court may not consider the issue on appeal unless the Board committed legal error by not considering the issue sua sponte. There was no legal error. In fact, the record would have strongly supported a finding of no acquiescence by First State. Namely, the investigation during the three months after Mr. Bull's improper January 2023 submission was the stated cause for First State's delay in terminating Mr. Bull.[66] The referee's hearing transcript, which statutorily becomes part of the UIAB's record, establishes that First State retained a consultant to investigate Mr. Bull's misconduct in February 2023.[67] When addressing the issue in the UIAB hearing, First State explained that "at that point, even in February, [we] could have terminated but there was an investigation into a report that had to be completed before that happened, and he was terminated in April."[68]

18. Furthermore, First State emphasizes that it terminated Mr. Bull for several reasons. Those multiple reasons, in addition to the inadequate report filings, explain why First State did not proceed to terminate Mr. Bull in January 2023 with an investigation regarding further alleged misconduct underway.[69] To that end, the termination letter informed Mr. Bull that he was fired for "recent actions [which] demonstrate a *pattern* of unprofessional conduct, insubordination, and poor job performance despite prior warnings[.]"[70] In First State's eyes, the late and incomplete assignments were part of a larger pattern of misconduct. As a result, First State reasonably stayed its termination decision pending the conclusion of the

---

[66] *See* Tr. of Bd. Hr'g, R. at 43: 22 – 44:1 ("So at that point, even in February, [First State] could have terminated but there was an investigation into a report that had to be completed before that happened, and he was terminated in April.").
[67] *Id.*, R at 155:11–20.
[68] *Id.*, R. at 43:22–24, 44:1.
[69] *Id.*, R. at 42:2–43:21; D.I. 10 at 3.
[70] Termination Letter, R. at 87.

investigation. For that additional reason, the Board committed no legal error by declining to find, *sua sponte*, that First State acquiesced to Mr. Bull's inadequate performance.

19.     Fifth and finally, Mr. Bull contends that the Board misinterpreted the factual record.[71] Specifically, he contends that it misunderstood the December 1, 2022, email by considering assignments that were already delinquent by the time Ms. Edwards sent her November 2022 email. Mr. Bull contends that the UIAB's misunderstanding magnified the appearance of his tardiness.[72]

20.     The Board's decision is unclear regarding whether it recognized that the emailed warning to Mr. Bull addressed three entirely separate assignments. Nevertheless, any possible confusion is not dispositive because there was substantial evidence to support a finding that Mr. Bull's poor work performance spanned multiple job responsibilities rather than simply one of his assigned tasks. In totality, the record supports the UIAB's finding of cause because (1) Mr. Bull knew he provided multiple, consecutive, late submissions, (2) First State found those submissions unacceptable, and (3) Mr. Bull then submitted an assignment lacking required information that had been sloppily prepared.[73] Assuming, *arguendo*, that Mr. Bull submitted each subsequent report by its due date in each remaining month of his employment, there was substantial evidence to support the Board's finding that he submitted a January report, one month after his final warning, in an unacceptable form.

---

[71] D.I. 9.

[72] *Id.*

[73] *See Pernic*, 121 A.3d at 1225 ("An employer need not specify the types of conduct that could lead to termination so long as the employee is aware that certain types of conduct are improper and prohibited. The employer is only required to show that the employee was warned that a general category of misconduct was unacceptable.")

12

21.     On balance, the facts of record, when viewed in the light most favorable to the prevailing party below, provided sufficient evidence for a reasonable mind to accept the UIAB's findings.  Likewise, the Board committed no error of law.  Given the deference due the Board's decision on appeal, the UIAB permissibly found that Mr. Bull willfully disregarded his responsibilities and the expectations set by his employer.

**WHEREFORE**, the decision of the Unemployment Insurance Appeal Board is **AFFIRMED** for the reasons explained above.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge